**UNITED STATES of America, Appellee,**

v.

**Kenneth SIMS, Appellant.**

No. 90–2701.

United States Court of Appeals, Eighth Circuit.

Submitted April 9, 1991.

Decided Dec. 27, 1991.

Rehearing Denied, Feb. 11, 1992.

Timothy Farrell, O'Fallon, Mo., argued, for appellant.

Mitchell F. Stevens, St. Louis, Mo., argued (Stephen B. Higgins and Raymond M. Meyer, on the brief), for appellee.

Before LAY, Chief Judge, FRIEDMAN,[*] Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Kenneth Sims appeals from the sentence imposed upon him following his plea of guilty to intentionally attempting to kill a witness with intent to prevent the witness from attending and testifying at trial and at other official proceedings in violation of 18 U.S.C. §§ 2 and 1512(a)(1)(A) (1988). Sims argues that the district court[1] erred when it increased his total offense level by three levels under United States Sentencing Commission, *Guidelines Manual*, § 2A2.1(b)(2)(C) (Nov.1989), for threatened use of a dangerous weapon, and two additional levels under U.S.S.G. § 2A2.1(b)(4), because the attempted murder was motivated by a payment or offer of money. We affirm the judgment and sentence of the district court.

On March 8, 1990, Sims contacted an individual, who proved to be a confidential

---

[*] The Honorable Daniel M. Friedman, Senior Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation.

1. The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

informant, and asked if the informant would kill Joseph Baumeister [2] for an undetermined amount of money. The informant agreed to do so, and shortly thereafter a meeting was arranged between Sims, Justus Manes and the informant. At the meeting, Manes told the informant he would pay $3,000 and cancel a $7,000 drug debt if the informant would kill Baumeister.

About two weeks later, the informant visited Sims' home, where Sims announced that Manes was willing to pay extra if the informant would dispose of Baumeister's body. Manes later offered to increase the payment by $3,000 if the informant would dispose of the body in such a manner that it could not be found. The informant accepted this offer and advised Manes that he would place the body in a drum and throw it in the Meramec River.

In the weeks that followed, the informant communicated periodically with Sims and Manes to work out the details of the murder. Sims offered to let the informant use his unregistered .44 caliber handgun to carry out the murder and the informant accepted Sims' invitation. One day before the murder was to take place the informant went to Sims' house to obtain the gun. Sims showed the informant the weapon, placed it in a case of beer bottles, and placed the case of bottles in the back of the informant's pickup truck. At that time, Sims also advanced the informant $300 of the $4,000 that Manes had provided to fund the murder. Sims later called the informant and asked him to wipe Sims' fingerprints off of the gun and the bullets.

On March 28, 1990, the informant and DEA agents staged Baumeister's murder, and took two pictures of the supposedly dead body. The next day the informant met with Manes and Sims at a restaurant to show them one of the photos.[3] Convinced that the murder was complete, Sims took the photo into the bathroom, tore it up, and flushed it down a toilet. Sims then told the informant that the remaining cash due was in a case of beer in the bed of the informant's truck. Police arrested both Manes and Sims as they were leaving the restaurant.

Sims pleaded guilty to attempted murder, which carries a base offense level of 20 points under the federal sentencing guidelines. U.S.S.G. § 2A2.1. The district court accepted the pre-sentence report recommendation that Sims' offense level be increased by three points because his offense involved the threatened use of a weapon, and sentenced Sims to 57 months imprisonment, the maximum sentence available for offense level 23.

Sims claims that the district court erred in making this determination because the crime to which he pleaded guilty did not involve the threatened use of a weapon. Sims relies on the fact that he gave the gun to a government informant who turned the gun over to DEA agents, to argue that, in fact, neither he nor the informant ever threatened to use the gun against Baumeister.

Sims also claims that the court arrived at its conclusion by applying the guidelines to stipulated fact, and urges this court to review *de novo* the district court's conclusion that Sims' offense involved the threatened use of a dangerous weapon. Even if we accepted Sims' characterization of the district court's finding, 18 U.S.C. § 3742(e) (1988) directs reviewing courts to give *due deference* to such district court determinations. We are convinced, however, that the court's determination is a finding of fact to be reviewed under the clearly erroneous standard. *See United States v. Ellis*, 890 F.2d 1040, 1041 (8th Cir.1989); *United States v. Ehret*, 885 F.2d 441, 444 (8th Cir.1989), *cert. denied*, 493 U.S. 1062, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990).

The sentencing guidelines explain that when determining whether the exist-

---

**2.** Baumeister was to be the government's witness in a drug case against Justus Manes, and the Drug Enforcement Agency was in the process of seizing Manes' house.

**3.** The DEA agents kept the second photo as evidence in case Sims or Manes destroyed the first one.

ence of a specific offense characteristic warrants altering the defendant's base offense level, the court should consider all of Sims' actions in aiding the informant and all actions Sims took in furtherance of the objective of killing Baumeister.[4] According to the stipulated facts, Sims attempted to murder a government witness by promising to pay the informant money, and by giving the informant an unregistered gun and ammunition for that specific purpose. We cannot conclude that the district court erred in finding that from the point of view of the victim Baumeister, Sims' offense involved the threatened use of a dangerous weapon. Accordingly, we affirm the district court's decision to increase Sims' total offense level by three points.

Sims next argues that the district court improperly increased his offense level by two points under U.S.S.G. § 2A2.1(b)(4), which directs the district court to impose such an increase "[i]f a conspiracy or assault was motivated by a payment or offer of money or other thing of value." Sims asserts that because he was convicted of attempted murder rather than conspiracy or assault, section 2A2.1(b)(4) does not apply.

As previously stated, the district court must consider under the guidelines "all acts ... committed ... by the defendant, or for which the defendant would be otherwise accountable," that occurred during the commission of or in furtherance of the offense. U.S.S.G. § 1B1.3(a)(1). Application Note 1 to that section specifically states in part:

> In the case of criminal activity undertaken in concert with others, *whether or not charged as a conspiracy*, the conduct for which the defendant "would be otherwise accountable" also includes conduct of others in furtherance of the execution of the jointly undertaken criminal activity that was reasonably foreseeable by the defendant."

(Emphasis added).

4. U.S.S.G. § 1B1.3(a)(1) instructs the court to consider:

  all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of

■ As this note makes clear, the defendant need not be charged with conspiracy in order for the court to take into account conspiratorial conduct in applying the guidelines. Indeed, we have held that the sentencing court has the authority under the guidelines to enhance the base offense level for conduct of which the defendant was actually acquitted. *United States v. Slow Bear*, 943 F.2d 836, 838 (8th Cir.1991); *see United States v. Eberspacher*, 936 F.2d 387, 389 (8th Cir.1991).

■ Although Sims apparently challenges only the propriety of applying U.S.S.G. § 2A2.1(b)(4) and not the district court's finding of a conspiracy, we have no hesitation in concluding that the stipulated facts in this case provided an ample basis for the court to conclude that Sims had engaged in a conspiracy with Manes.

We thus conclude that the district court did not err in imposing the two-level enhancement under section 2A2.1(b)(4).

For the foregoing reasons, we affirm the sentence.

the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense....