**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Mark R. HANNA, Defendant–Appellant.**

**No. 93–30457.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 8, 1994.

Decided March 9, 1995.

---

Marcus S. Topel, Topel & Goodman, San Francisco, CA, for defendant-appellant.

Leonard E. Bailey, U.S. Dept. of Justice, Washington, DC, for plaintiff-appellee.

Before: NOONAN, O'SCANNLAIN, and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

In this case we are called upon to determine whether the district court imposed an unlawful sentence. For the reasons which follow, we vacate the sentence and remand the case for resentencing before a different judge.[1]

## FACTS AND PRIOR PROCEEDINGS

In December 1992 law enforcement officials executed a federal search warrant on property located in Olympia, Washington, where they discovered an 8–acre, 975–plant marijuana grow operation. They arrested Jon Harader, who was living on the property at the time. Documentation found on the premises indicated that the property was owned by a "Clifford Foster" in the care of Mark Hanna, a local attorney. A subsequent search of Hanna's residence revealed documents and money orders in the name of Clifford Foster.

Although not yet formally charged with any crime, Hanna, accompanied by counsel, turned himself in to authorities on January 5, 1993. Hanna proved to be very cooperative. He stated that Clifford Foster was a pseudonym for an old friend, Ronald Bennett, and that he (Hanna) purchased the Olympia property in 1985 on behalf of Bennett, who wanted to grow marijuana. Hanna explained that he helped Bennett set up the marijuana operation in 1985 and took care of the property—even living there in 1987 and 1988—until 1989, when Harader took Hanna's place. Hanna admitted that he continued until December 1992 to pay the taxes and utilities on the property with money allegedly provided by Bennett. Hanna also identified four other marijuana farms, all purportedly owned by Bennett. As a result of Hanna's testimony, police arrested Bennett and five additional co-conspirators and shut down Bennett's drug operation. With the exception of Bennett, each of the co-defendants cooperated with authorities, pleaded guilty, and received reduced sentences under U.S.S.G. § 5K1.1.[2]

On February 19, 1993, Hanna entered a pre-indictment plea of guilty to one count of aiding and abetting the manufacture of more than 100 marijuana plants in violation of 21 U.S.C. §§ 841(a)(1)[3] and 841(b)(1)(B)[4] and 18 U.S.C. § 2.[5] That same day the government filed its plea agreement, which stated, *inter alia*, that the parties understood that the government would recommend a sentence of imprisonment of not less than five, and not more than seven years. Hanna was

---

1. By unpublished memorandum separately filed this date, we also dispose of the government's appeal of a sentence imposed in a companion case, *United States v. Bennett*, No. 94–30025.

2. That section reads, in relevant part: "Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines."

3. That section reads, in relevant part: "[I]t shall be unlawful for any person knowingly or intentionally ... to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance[.]"

4. That section reads, in relevant part: "[A]ny person who violates subsection (a) of this section shall be sentenced ... to a term of imprisonment which may not be less than 5 years and not more than 40 years[.]"

5. That section reads in its entirety: "(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

"(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

released pending sentencing, which was reset from May 14 to August 27, 1993.

The Probation Office's ("PO") presentence investigative report ("PSR") initially calculated Hanna's adjusted offense level at 29 and assigned him a criminal history category of I, which resulted in a Guideline sentence range of 87 to 108 months.[6] Based on the government's request that Hanna not serve more than seven years in custody, however, the PO recommended a prison sentence of 84 months. Hanna filed timely objections to the PSR.

On August 23, 1993, the government filed under seal a motion for downward departure under U.S.S.G. § 5K1.1, asking the district court to impose a sentence below the standard Guideline range but still within the plea agreement's stipulated range of five to seven years. Four days later the district court rejected the plea agreement and continued the hearing for two weeks in order to give Hanna the opportunity to consider withdrawing his plea. On September 10, 1993, Hanna announced in open court that he would proceed with sentencing without benefit of a plea agreement.

The district court continued the hearing and dispatched a probation officer to interview Bennett—the only defendant who had refused to cooperate with the police—in order to obtain additional information about Hanna. (Bennett was awaiting sentencing at this time, having entered a plea of guilty to all nine counts of the indictment on July 12, 1993.) Bennett stated that Hanna had misrepresented by underreporting to the court the extent of his (Hanna's) profits from the Olympia operation; given Bennett legal advice to help evade police detection of his marijuana grow operations; provided $60,000 of drug profits to help Bennett finance the start-up of another marijuana grow operation in Graham, Washington (the "Graham grow"); and supplied marijuana to fellow attorneys and law school classmates.

Based on this information the PO drafted an addendum to Hanna's second PSR.[7] The addendum recommended that Hanna's base offense level of 30 be increased by two points for his role in the Graham operation, by four more points for being a leader of the drug conspiracy, and by a further two points for having used his legal skills in committing the offense charged. The addendum also omitted the PSR's three-level downward adjustment for acceptance of responsibility. The addendum's recommended adjusted offense level (38) and criminal history category (I) resulted in a Guideline sentence range of 235 to 293 months.

As the result of the presentations contained in the addendum, the district court *sua sponte* issued a warrant for Hanna's immediate arrest and detention. Both Hanna and the government protested the arrest at a hearing on October 5, 1993, but the court overruled their objections and continued Hanna's detention pending sentencing.

As part of Hanna's continued sentencing hearing, the court held an evidentiary hearing on October 13 and 14, 1993, in which Bennett testified concerning his allegations in the PO's addendum. The court severely restricted the scope of both the government's direct examination and Hanna's cross-examination of Bennett and, despite numerous objections from both the government and Hanna, consistently upheld Bennett's repeated invocations of the Fifth Amendment. The gist of Bennett's testimony was a repetition of what he had previously told the PO as reported in the addendum to the second PSR. Hanna strenuously denied Bennett's allegations. The court set sentencing for Hanna on December 3, 1993.

The PO's final amended PSR incorporated Bennett's claims, and included recommendations that Hanna's base offense level be increased by two points each for his participation in the Graham grow and his use of legal skills in the commission of the offense. On the other hand, the final amended PSR deleted the addendum's recommendation of a

---

6. The PO set Hanna's base offense level at 30, then adjusted upward two levels (to 32) for having used a special skill, and downward three levels (to 29) for acceptance of responsibility.

7. Before preparing the addendum, the PO drafted a second PSR in response to Hanna's objec-

tions to the first PSR. Despite some corrections and minor changes, the second PSR still included the two-level upward adjustment for use of a special skill and the three-level downward adjustment for acceptance of responsibility.

four-level upward adjustment for leadership, and reinstated the first two PSRs' recommendations of a three-level downward adjustment for acceptance of responsibility. The final amended PSR calculated a Guideline sentence range of 108 to 135 months.

Hanna argued against both of the two-level upward adjustments and the government renewed its motion for a downward departure under U.S.S.G. § 5K1.1. The court rejected Hanna's arguments and denied the motion for downward departure. The court then sentenced Hanna to 122 months in prison, to be followed by five years of supervised release. The court also imposed a fine of $10,000 and a special assessment of $50. Hanna has timely appealed.

## ANALYSIS

### Standard of Review

■ We review *de novo* the legality of a sentence, *United States v. Guzman–Bruno*, 27 F.3d 420, 422 (9th Cir.) (as amended), *cert. denied*, ——— U.S. ———, 115 S.Ct. 451, 130 L.Ed.2d 360 (1994), as well as a district court's legal interpretation and application of the Sentencing Guidelines. *United States v. Buenrostro–Torres*, 24 F.3d 1173, 1174 (9th Cir.1994) (per curiam). We examine for clear error a district court's factual findings with respect to the sentence imposed, *id.*, while the selection of an appropriate sentence from within the applicable Guideline sentence range is left to the district court's discretion. *Williams v. United States*, 503 U.S. 193, 203–05, 112 S.Ct. 1112, 1121, 117 L.Ed.2d 341 (1992).

### Discussion

### I

Hanna first contends that, in denying the government's motion for a downward departure under U.S.S.G. § 5K1.1, the district court failed to exercise its discretion in the

manner prescribed by the Sentencing Guidelines and thereby imposed an illegal sentence subject to review under 18 U.S.C. § 3742(a)(1).[8] We reject this argument as finding no support in the law.

■ The relevant portion of section 5K1.1 provides that, "Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court *may* depart from the guidelines." U.S.S.G. § 5K1.1, p.s. (emphasis added). While it is the prosecutor who has the discretion to decide whether or not to file a motion under section 5K1.1 based on a defendant's assistance to the government, "The extent of that assistance and its impact on the sentence are matters left within the sound discretion of the sentencing judge." *United States v. Keene*, 933 F.2d 711, 714 (9th Cir.1991).

■ Just as we are without jurisdiction to review a district court's discretionary decision in fixing the extent of a downward departure under section 5K1.1, *United States v. Vizcarra–Angulo*, 904 F.2d 22, 23 (9th Cir. 1990), a district court's discretionary refusal to depart downward is similarly unreviewable on appeal. *See United States v. Morales*, 972 F.2d 1007, 1011 (9th Cir.1992), *cert. denied*, ——— U.S. ———, 113 S.Ct. 1665, 123 L.Ed.2d 283 (1993). As it is clear from the sentencing hearing transcript that the district court knew it had the legal authority to depart downward under U.S.S.G. § 5K1.1 but chose to exercise its discretion not to do so, that decision is unreviewable on appeal.[9]

### II

This appeal largely stands or falls on Hanna's contention that the district court violated his right to due process of law, and thereby committed reversible error, by imposing a sentence that was based on materially false

---

8. That section reads in its entirety: "A defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence [ ] was imposed in violation of law[.]"

9. Hanna argues that the district court cannot be deemed to have exercised its discretion in denying 5K1.1 relief because the court failed to itemize its reasons for rejecting a downward depar-

ture. *See* U.S.S.G. § 5K1.1(a)(1)–(5), p.s. (listing five factors court may consider in *granting* downward departure). This would stand section 5K1.1 on its head, as the background commentary only requires "[t]he sentencing judge ... [to] state the reasons for *reducing* a sentence under this section." U.S.S.G. § 5K1.1, comment. (backg'd.).

and unreliable information, *viz.*, the unsupported and uncorroborated allegations of Hanna's co-defendant, Ronald Bennett.[10] We agree.

▇ The constitutional guarantee of due process is fully applicable at sentencing. *Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 1204–05, 51 L.Ed.2d 393 (1977). Thus, a trial court violates a defendant's due process rights by relying upon materially false or unreliable information at sentencing. *United States v. Kerr,* 876 F.2d 1440, 1445 (9th Cir.1989) (citing *United States v. Ruster,* 712 F.2d 409, 412 (9th Cir.1983)). Such reliance on materially false or unreliable information constitutes an abuse of sentencing discretion as well.[11] *United States v. Petty,* 982 F.2d 1365, 1369 (9th Cir.), *amended on denial of reh'g,* 992 F.2d 1015 (1993), *cert. denied,* — U.S. —, 114 S.Ct. 683, 126 L.Ed.2d 650 (1994); *accord United States v. Ayers,* 924 F.2d 1468, 1481 (9th Cir.1991) (as amended).

▇ The transcripts of the various hearings, and in particular that of the October 13–14 sentencing-evidentiary hearing, convince us that the trial court's handling of this matter fell so far short of a reasonable standard of objectivity that the reliability of the evidence used to justify the two-level upward adjustment for Hanna's alleged participation in the Graham grow cannot be upheld.

Based on a single allegation drawn from an inference made by Hanna's co-defendant, Ronald Bennett, that Hanna had given marijuana to other lawyers and law students at a party, the court decided that Hanna supplied drugs to local lawyers in both public and private service. As a consequence, the court discounted—indeed, looked suspiciously at—the large number of favorable letters written by attorneys on behalf of Hanna.

The court also dispatched a PO to interview Bennett, the upshot of which was to allow Bennett to testify at Hanna's sentencing hearing where, over objection by the government and Hanna's defense counsel, the court permitted Bennett's own attorney to examine Bennett. In addition, the court allowed Bennett successfully to invoke the Fifth Amendment a total of thirty-eight times during the government's examination and Hanna's cross-examination, despite the fact that Bennett had already entered a plea of guilty to all nine counts of the indictment and was awaiting sentencing. When Hanna subsequently moved to strike Bennett's testimony, the court denied the motion. When the government asked to be allowed to call Hanna as a witness at Bennett's sentencing hearing, the court denied that request as well.

At sentencing, the court went so far as to say that Bennett was to be credited with having "benefited society and this community" by having come forward and shown that a member of the bar (Hanna) had had a long-standing involvement in the growing of marijuana, despite the fact that it was Hanna, not Bennett, who first came forward, and Bennett was the only defendant who had refused to cooperate with the prosecution—and even to admit to any wrongdoing whatsoever—right up until the very day of his trial. It was only after Bennett had entered a plea of guilty that he testified against Hanna while repeatedly invoking the privilege against self-incrimination. Bennett's decision to cooperate with the court, rather than with the prosecution, paid off: While Hanna received a sentence of 122 months, substantially above the maximum recommended by the government, Bennett received a sentence earlier the same day of only 120 months, *i.e.,* the statutory minimum, that was substantially below the Guideline range for his offense (*i.e.,* 188

---

**10.** Hanna also contends that his sentence should be set aside because the district court improperly considered unlawfully obtained information and Hanna's failure to implicate others, as well as because the district court failed to individualize Hanna's sentence. In addition, Hanna asserts that the sentencing court's employment of irregular evidentiary procedures and the patent unbelievability of Bennett's allegations warrant reversal. In light of our holding with respect to Hanna's due process argument, we need not reach the merits of these additional contentions.

**11.** *See also* U.S.S.G. § 6A1.3(a) (sentencing court may consider "relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy"). The commentary adds that "Unreliable allegations shall not be considered[,]" *citing United States v. Weston,* 448 F.2d 626, 634 (9th Cir.1971), *cert. denied,* 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972). U.S.S.G. § 6A1.3, comment. (backg'd.).

to 235 months) and without benefit of the government having filed a section 5K1.1 motion.

██ Put simply, Bennett's allegations are largely uncorroborated and unreliable. Bennett had everything to gain and nothing to lose by implicating Hanna, and Bennett presumably wanted revenge for Hanna's having fingered both Bennett and his (Bennett's) brother. Bennett's claims were not only inconsistent with Hanna's denials but were unsupported by the other co-defendants' statements, or any other evidence, as well. The prosecution's own view of the evidence was and remains diametrically opposed to Bennett's story, *i.e.*, the government believed Hanna and disbelieved Bennett. Finally, Bennett never cooperated with the prosecution.

Because we conclude that the district court violated Hanna's due process rights by sentencing him based on unreliable information, we must vacate the sentence imposed.[12]  *See United States v. Williams*, 41 F.3d 496, 502 (9th Cir.1994).

### III

██ Finally, Hanna asserts that the district judge showed such extreme and obvious bias during the course of the proceedings that the case should be reassigned to a different judge on remand. Absent a showing of personal bias on the part of the trial judge, we will direct the reassignment of a case on remand only under unusual circumstances. *See ·Medrano v. City of Los Angeles*, 973 F.2d 1499, 1508 (9th Cir.1992), *cert. denied*, — U.S. ——, 113 S.Ct. 2415, 124 L.Ed.2d 638 (1993). We consider three factors in making such a determination:

(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Id.* (quoting *United States v. Sears, Roebuck & Co.*, 785 F.2d 777, 780 (9th Cir.)) (in turn quoting *United States v. Arnett*, 628 F.2d 1162, 1165 (9th Cir.1979) (quoting *United States v. Robin*, 553 F.2d 8, 10 (2d Cir.1977) (en banc)), *cert. denied*, 479 U.S. 988, 107 S.Ct. 580, 93 L.Ed.2d 583 (1986)). "The first two of these factors are of equal importance, and a finding of one of them would support a remand to a different judge." *United States v. Sears, Roebuck & Co.*, 785 F.2d at 780 (citing *United States v. Alverson*, 666 F.2d 341, 349 (9th Cir.1982)).

██ In light of the record before us, we conclude that the trial judge would likely have substantial difficulty in putting out of his mind the views and findings we have found to be based on materially false and unreliable evidence. *See id.* Accordingly, this case on remand must be reassigned for resentencing before a different judge.

### CONCLUSION

The sentence appealed from is VACATED. The case is remanded to the Chief Judge of the United States District Court for the Western District of Washington for reassignment to another district judge for purposes of resentencing.

---

12. If the inclusion of the two-level upward adjustment for the Graham grow made no difference to Hanna's sentence, we could uphold the sentence in spite of the problems noted. *See*

*United States v. McAninch*, 994 F.2d 1380, 1389 (9th Cir.) (remand not necessary when sentencing error could not have affected minimum sentence imposed; citing and discussing harmless

---

error rule of *Williams v. United States, supra* ), *cert. denied,* —— U.S. ——, 114 S.Ct. 394, 126 L.Ed.2d 342 (1993). However, striking the two-level adjustment would mandate setting aside the sentence, because Hanna's adjusted offense level would then be 29, not 31, with a resultant Guideline sentence range of 87–108 months, well below the 122 months Hanna received.