**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Randy H. CHEE, Defendant–Appellant.**

**No. 96–10200.**

United States Court of Appeals,
Ninth Circuit.

Submitted March 11, 1997.[*]

Decided April 16, 1997.

R.App.P. 34(a); 9th Cir. R. 34–4.

David Lee Titterington, Assistant Federal Public Defender, Phoenix, Arizona, for defendant-appellant.

Thomas L. LeClaire, Assistant United States Attorney, Phoenix, Arizona, for plaintiff-appellee.

Before CHOY, BRUNETTI, and FERNANDEZ, Circuit Judges.

BRUNETTI, Circuit Judge:

Randy Harrison Chee appeals his sentence under the United States Sentencing Guidelines. Chee pled guilty to one count of assault on an Indian reservation, prohibited by 18 U.S.C. §§ 113(a)(6), 1153 and the district court sentenced him to 44 months of imprisonment. On appeal, Chee contends that the district court improperly considered hearsay at sentencing, incorrectly concluded that he physically restrained the victim, incorrectly found that he threatened the victim with a deadly weapon, and improperly denied him a third point for acceptance of responsibility. We affirm the district court's decision.

## I. Background

On February 5, 1995, Chee instigated an argument with his girlfriend, Shelley Begaye. He repeatedly beat her and then took her to a motel room in Flagstaff. The next day, Begaye was able to call her mother and the motel manager, who helped her escape from Chee. Begaye was treated at a local hospital, where she gave statements to several people. Later that day, Chee voluntarily surrendered to police and gave them a lengthy statement. All of these statements were provided to the sentencing court and to the Probation Officer who prepared the presentence report (PSR). Although Chee objected to portions of the PSR factual statement, he never challenged the accuracy of his statement to the police.

After giving his initial statement, Chee was questioned about details of the assault by FBI Agent Geeslin and Flagstaff Detective Young. Chee stated that he and Begaye had been dating for approximately five years, and that he had hit her on five other occasions. Chee admitted slapping, punching, kicking, and biting Begaye, as well as pulling her hair and dragging her by the hair, on February 5. He denied that he forced Begaye into his car, but reiterated that he activated the power door locks when she tried to open the door to leave the car. Before Chee pulled the car over, Begaye told him twice that she wanted to leave the car. To prevent her from leaving the car, Chee said he locked the car and held her down.

Chee also admitted that he threatened to kill Begaye with a knife or gun, although he lied to her about having a weapon. He asked her if she wanted to die, told her he was going to kill her, and opened the trunk to see if he could find a weapon. In the police interview, Chee never specifically stated that he had threatened her with a gun, but agreed with the officers' characterization of his threat in that manner. Chee did not have a gun or any weapon in his car. After he threatened to kill Begaye, the fight ended. Chee said that Begaye went with him to the motel voluntarily, and did not try to leave or make any phone calls while at the motel. Nonetheless, he admitted that he would not have let her leave the motel room if she had asked him for permission to leave.

Agent Geeslin also questioned Begaye at the hospital. She told Geeslin that Chee forced her to get into the car by throwing her into the car, closing the door behind her, and quickly driving away while using the power door locks. She also stated that Chee hit her when she tried to leave the car. She said Chee pulled the car over, continued beating her beside the car, and dragged her by her hair to the trunk of the car. Chee told her that he had a gun in the trunk and was going to kill her. Then, Chee took her to the motel room where he forced her to have sex, and left her alone in the room the next morning. As soon as Chee left the room, Begaye called her mother, who called the police, and the front desk. Begaye's mother, police officers, and the motel manager then rescued Begaye from the room and took her to the hospital.

Flagstaff Police Officer Brown took a report from Begaye at the motel and the hospital. She told Brown that Chee came by her house, they talked, and he took her by the arm and guided her back to his car. Chee opened the passenger door and told her to get in. After they got into the car Chee said that "they were all going to die" then he began driving her away from her family's car. She stated that he hit her a couple of times, grabbed her by the hair and held her head under the steering wheel while he was driving. Begaye said that when Chee stopped the car, he walked her to the trunk, and told her that he "was going to get his gun and kill her." Officer Brown noticed that Begaye had many bruises, abrasions,

and bite marks on her head, back, arms, and legs.

On March 1, 1995, a grand jury indicted Chee for one count of assault on an Indian reservation and one count of kidnapping on an Indian reservation.

On the first day of trial, after jury selection, the court heard argument regarding Begaye's testimony. In the time between the assault and trial, Begaye and Chee reconciled, and just before trial Begaye indicated to the government that she would not testify favorably for the government. When the prosecutor, Agent Geeslin, and others were confronted with this change of heart, they recommended that Begaye obtain counsel and told her that she could be prosecuted for making false statements if her testimony at trial differed from her statements after the incident. Once Begaye received this advice, she refused to discuss the case with Chee's counsel and obtained an attorney. She indicated that she would assert the Fifth Amendment and would not testify at trial.

The district court then held a hearing concerning Begaye's decision to assert the Fifth Amendment. At the hearing, her attorney indicated that Begaye would probably still be willing to testify to the assault facts she relayed to the officers right after the crime, but that her testimony about the kidnapping would be different and thus might subject her to criminal liability. The court ruled that her testimony on the assault count would not be incriminating, and told the government it had several options, including dismissing the kidnapping, immunizing Begaye, or not calling her at all. At that point, the government agreed to dismiss the kidnapping count and Chee agreed to plead guilty to assault. Begaye later met with the Probation Officer and told him about her injuries. Chee objected to the PSR statements regarding the Probation Officer's interview with Begaye as well as the PSR paragraphs based on Begaye's earlier reports.

At the April 22, 1996 sentencing, the court relied on the PSR statements taken from Begaye by the Probation Officer and the police, but ruled that Chee's statement was sufficient to support its findings even in the absence of any statements made by Begaye. The court also increased the offense level by

three for threatened use of a deadly weapon and by two for restraint of the victim. Finally, the court gave Chee a downward adjustment of two levels for acceptance of responsibility, but denied Chee's request for an additional point adjustment for assistance to the government in the prosecution of his case. Chee challenges all four rulings.

## II. Discussion

### A. Hearsay

■ Chee contends that the district court improperly relied on Begaye's hearsay statements when sentencing him. We agree that Chee was denied the opportunity to question Begaye about her statements. Although the court ruled that she could assert the Fifth Amendment privilege only for the kidnapping count and allowed Chee to introduce statements she made to defense counsel before asserting her privilege, she apparently refused to discuss either count with the defense after asserting the privilege. Nonetheless, the district court did not abuse its discretion by considering Begaye's hearsay statements.

■ Generally, hearsay is fully admissible at sentencing. *See United States v. Huckins,* 53 F.3d 276, 279 (9th Cir.1995). However, due process requires that "some minimal indicia of reliability accompany a hearsay statement at sentencing." *United States v. Petty,* 982 F.2d 1365, 1369 (9th Cir.1993), *amended on other grounds,* 992 F.2d 1015 (9th Cir.1993).

In this case, the court found Begaye's early statements, made to the police and at the hospital, to be reliable. The court explained that her initial statements were "credible and trustworthy," in part because they were made "immediately upon contact with her mother, with the contact by the police, and to hospital staff." That finding was not an abuse of discretion. *See Petty,* 982 F.2d at 1369.

In *Petty,* the court upheld the district court's ruling that statements supported by other facts were reliable. *Id.* at 1369. In contrast, Chee relies on cases where the court made clear errors regarding the facts about the hearsay statements and those statements bore no indicia of reliability. *See*

*Huckins,* 53 F.3d at 279–80; *United States v. Hanna,* 49 F.3d 572, 577–78 (9th Cir. 1995). This case is much closer to *Petty,* because the court here listed factors showing the reliability of Begaye's statements, such as their corroboration by other statements, including Chee's statement, and their immediacy to the crime. Chee has failed to demonstrate how the district court abused its discretion.

■ Additionally, with the exception of Begaye's statement about the duration of her pain, a point Chee does not contest, the court found that it did not need to rely on Begaye's statements. The court found that Chee's own statement supported its findings. To require a remand, any improper reliance on hearsay must be "demonstrably made the basis for the sentence." *Huckins,* 53 F.3d at 280 (quotation omitted). In light of the court's express finding that Chee's statement supported its rulings and that it did "not need to rely upon" Begaye's statements, Chee could not show the need for a remand, even if the court had somehow abused its discretion.

Chee also infers that government misconduct prevented him from cross-examining Begaye. At trial, the district court denied Chee's motion to dismiss the indictment for alleged government misconduct, finding that the government had acted appropriately toward Begaye. Chee did not appeal that determination. We reject Chee's claim that the hearsay could not be used at sentencing because of the government's failure to grant Begaye immunity. He did not raise that claim in the district court and thus has waived it. *See United States v. Flores-Payon,* 942 F.2d 556, 558 (9th Cir.1991).

**B. Restraint of the Victim**

■ Chee contends that the district court improperly applied a two-level enhancement to his offense level for restraint of the victim. According to Chee, the only evidence of restraint was Chee's admitted use of the power door locks in the car. The court found that Chee "consciously locked her in the car by use of power door locks and holding her down" and did so "to preclude her from jumping out of the vehicle ... it was to keep her in the car." The district court determined that Chee restrained Begaye inside

the vehicle. Chee does not argue that these factual findings were clearly erroneous, but instead contends that his acts do not meet the legal definition of "restraint."

We disagree. This court has recently defined restraint under the Guidelines. *See United States v. Thompson,* 109 F.3d 639 (9th Cir.1997) (holding that "no actual touching" is required to constitute restraint under the Sentencing Guideline when defendant pointed gun at victim). Chee does not dispute that he restrained Begaye from leaving the vehicle by depressing the automatic door locks and holding her down. This behavior falls squarely within *Thompson's* definition of restraint. *Id.* (victim restrained when defendant "checked her free activity and otherwise controlled her actions"). Consequently, we reject Chee's argument as a matter of law.

**C. Threatening Use of a Deadly Weapon**

■ Chee also asserts that because he did not possess a deadly weapon, the court erred in imposing a three-level enhancement under § 2A2.2(b)(2).

Section 2A2.2(b)(2)(C) provides for a three-level increase when a dangerous weapon "was brandished or its use was threatened." USSG § 2A2.2(b)(2). The district court found that, while it was "clear that [Chee] did not brandish either a gun or a knife, ... [there is] no doubt that [Begaye] was threatened with a weapon; thought that there was a weapon in the defendant's possession, in his vehicle; and felt that the weapon would be used on her if she resisted further." Therefore, the court found that "there was a threat of the use of a weapon, a deadly weapon in this instance, that justifies" the three-level increase.

It appears that no circuit has addressed this question and very few cases discuss the threat of weapon use at all. This may be attributed to the logical and obvious argument that threatening to use a weapon is a threat whether or not a weapon is present. Accordingly, a plain reading of the Guideline provides an adequate basis for our decision. The Guideline does not require the actual presence of a weapon and to do so would essentially make the "threatened" clause a

redundancy to the preceding "brandished" requirement. *See* USSG § 2A2.2(b)(2)(C).

*United States v. Sims* supports our decision. 952 F.2d 1014 (8th Cir.1991). In *Sims,* the Eighth Circuit addressed the threatened use of a weapon from the victim's standpoint. 952 F.2d at 1017. There, the defendant contracted with an informant to kill a government witness. The defendant gave the informant a gun and ammunition to use during the killing but never had any direct contact with the victim. The district court increased the defendant's offense level "because his offense involved the threatened use of a weapon." *Id.* at 1016. On appeal, the defendant argued that, since he never directly threatened the victim with the gun, he could not have threatened to use a weapon. The court in *Sims* disagreed, noting that, "from the point of view of the victim ... Sims' offense involved the threatened use of a dangerous weapon." *Id.* at 1017.

This approach is consistent with the Guideline's language, which simply refers to threatening the use of a weapon and not to actually possessing the weapon. Under this formulation, the district court's factual finding that Begaye believed Chee was threatening her and legal finding that Chee's admitted threat to use a knife or gun constituted threatening the use of a weapon were not erroneous.

## D. Acceptance of Responsibility

■ Finally, Chee contends that he merited a three-point reduction for acceptance of responsibility, instead of the two he was granted. Section 3E1.1(b) provides that a defendant who qualifies for a reduction for acceptance of responsibility may qualify for an additional one-point reduction where he either "(1) timely [provides] complete information to the government concerning his own involvement in the offense; or (2) timely [notifies] authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial." USSG § 3E1.1(b)(1)-(2). As the government notes, to qualify under subsection (b)(2), the defendant must plead early enough that the prose-

cution may avoid trial preparation. *See* USSG § 3E1.1(b)(2), comment. (n.6).

The district court denied Chee the third point because it found that he was "minimizing his conduct with respect to the various episodes of restraint ... [and] denying the threats that were made." According to the district court, Chee had "not provided complete information" to the police because he minimized the extent of the physical abuse when he talked to the officers and later contested some of his statements. The court also noted that the government had completely prepared for trial and that the parties had already picked a jury when Chee pled guilty.

The district court did not clearly err. The defendant did not timely provide complete information concerning his assault and kidnapping of Begaye. In addition, Chee should not profit from the acceptance of responsibility merely because Begaye recanted her testimony. By minimizing or not admitting the charges attested to by the witness, the defendant forced the government to prepare for trial. He should not now be rewarded for the victim's new-found reticence. He can only get the additional one-point reduction based upon his timely cooperative actions, not on the fortuitous change of heart of the key witness who was also the victim.

The dissent cites *United States v. Stoops,* 25 F.3d 820, 822 (9th Cir.1994), in arguing that timing is the sole determinant of the award of an additional point. However, both the facts and conclusion in *Stoops* differ markedly from our case. In *Stoops,* the defendant provided "[m]ultiple consistent confessions on the day of arrest." *Id.* at 823. The court held that this cooperation qualified the defendant for the additional point, despite the easy availability of inculpatory evidence. *Id.* Here, the defendant provided inconsistent statements and attempted to minimize the extent of his physical abuse of the victim.[1] Chee's conduct does not approach the level of cooperation demonstrated by the defendant's unqualified confession in *Stoops.*

---

1. In addition, the *Stoops* decision did not address the ramifications of a guilty plea entered on the day of trial and whether that timing would dis-

qualify a defendant from the third assistance point. *Stoops,* 25 F.3d at 822 n. 1.

█ Only early and consistent cooperation which saves the government from the rigors of trial preparation and jury selection merits the assistance reduction. Here, the district court did not clearly err in finding that Chee's eleventh-hour cooperation came too late to qualify for the one-point reduction.

AFFIRMED.

FERNANDEZ, Circuit Judge, concurring and dissenting:

I concur in Parts A, B, and C of the majority opinion, but dissent from Part D.

I agree with Chee's contention that he was entitled to a three-level reduction for acceptance of responsibility. While one could question his entitlement to any reduction at all, the government has not contested the two-level reduction, and the inquiry for the third level does not involve the same analysis as the underlying determination that a defendant has accepted responsibility in the first place.

The district court denied Chee the third level because it found that he was "minimizing his conduct with respect to the various episodes of restraint ... [and] denying the threats that were made." The court also noted that the government had completely prepared for trial and that the parties had already picked a jury when Chee pled guilty.

In part (a) the Acceptance of Responsibility Guideline provides for a two-level decrease "if the defendant clearly demonstrates acceptance of responsibility for his actions." USSG § 3E1.1(a).[1] Then in part (b) it provides that a defendant who qualifies for the two-level reduction may qualify for an additional one level reduction where he either "(1) timely [provides] complete information to the government concerning his own involvement in the offense; or (2) timely [notifies] authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial." USSG § 3E1.1(b)(1)-(2). Thus, the inquiry for the third level does not involve a reconsideration of the factors leading to the two-level reduction; the only issue for the third level is timing. *See United States v. Stoops*, 25 F.3d 820, 822 (9th Cir.1994) (once acceptance is decided, the issue is timing).

The government insinuates that Chee is not entitled to the extra reduction because he has not completely accepted responsibility for his actions. The district court's analysis was to the same effect. Of course, that approach overlooks the fact that the district court ultimately decided that Chee did accept his responsibility. Were it otherwise, the court could not have given him the two-level reduction, a reduction which the government has not appealed. *See Stoops*, 25 F.3d at 822.

The government says it had to prepare for trial but also overlooks the fact that subsections (b)(1) and (b)(2) are alternatives, and a defendant who timely admits his guilt will qualify for the third level under subsection (b)(1), even if he does not plead guilty immediately and is ineligible under subsection (b)(2).

We have previously stressed the difference between the subsections and have held that a defendant who confessed soon after the crime but then held up the plea process by challenging the confession as coerced was still entitled to a three-level reduction for acceptance of responsibility. *See id.* at 822–23. In *Stoops*, we explained that "[a] defendant qualifies under subsection (b)(1) if he timely provides complete information, whether or not he ... timely notifies the government of his intent to plead guilty." *Id.* at 823. We rejected the assertion, which the government repeats here, that because the defendant did not plead guilty in time for it to avoid trial preparation, he could not obtain the third level under any circumstances. *See id.* at 822 n. 1.

Chee went to the police within 12 hours of the crime and gave them a full statement about the assault. Under *Stoops*, the fact that he later challenged the legal effect of some of his admissions does not obviate the fact that he quickly and freely confessed to the assault. Nor does the fact that he continued to challenge his guilt of the crimes of kidnapping and rape take away from the timing of his acceptance of responsibility for the assault to which he pled guilty. Again, that challenge could have been considered on the issue of whether he *did* accept his re-

1. All references are to the Guidelines effective November 1, 1995.

sponsibility; it has nothing to do with timing. Therefore, Chee was entitled to a three level decrease for acceptance of responsibility.

Chee terrorized his girlfriend—he confined her in his car, he beat her, he threatened to obtain a weapon from the trunk of the car in order to kill her, he then carried her off to a motel where he held her overnight. She finally got away the next morning. The police reports and the course of this case tell the all too common story of a battered woman. Fortunately for Chee, his victim recanted part of her story about that night of terror. When she did, Chee actually pled guilty to the assault, and it appears that he always accepted responsibility for that. The district court determined that he did accept responsibility. Once the court made that determination, the only issue left was timing. But it is clear that Chee immediately accepted all of the responsibility that he was going to accept and even stood ready to plead guilty to assault at all times. Thus, he was entitled to the third level of decrease also.

I, therefore, respectfully dissent from Part D of the majority opinion.