**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ronald B. CASTANEDA, Defendant–Appellant.**

**No. 99–30359.**
**D.C. No. CR–98–30040–ALA.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 6, 2001.

Decided March 21, 2001.

---

Before T.G. NELSON, GRABER, and RAWLINSON, Circuit Judges.

### MEMORANDUM [*]

### I. HEARSAY

 Reliance on accomplice hearsay violates a defendant's constitutional right to due process only if the hearsay is unaccompanied by minimal indicia of reliability.[1] Whether there are such minimal indicia turns primarily on the presence or absence of corroboration.[2] In this case, there is evidence that tends to corroborate Warren's statement. Castaneda's fingerprints were found on some laboratory equipment inside the garage. Castaneda was also able to describe the inside of the garage, and he gave conflicting and confusing testimony as to why this was so. Warren's statement, moreover, was not made in the context of plea negotiations. It was freely and voluntarily given the day of the bust-at least three months before the threatening letters from Kline began arriving. Though not overwhelming, these indicia of reliability are sufficient.

### II. ANDRUS "ERROR"

Castaneda makes a persuasive argument that in some Ninth Circuit cases, including *United States v. Andrus*,[3] this court has mistakenly stated that both the minor *and* minimal role adjustments "are to be used infrequently," [4] when in fact the sentencing guideline commentary pairs the "infrequently used" admonition with the minimal role adjustment exclusively.[5] Though true, this is academic. There is no evidence that the trial court relied on this misstatement or that the court failed to award Castaneda a role reduction because of an inapplicable "infrequency admonition."

---

[*] This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

[1]. *United States v. Huckins*, 53 F.3d 276, 279 (9th Cir.1995).

[2]. *See United States v. Petty*, 982 F.2d 1365, 1369 (9th Cir.1993).

[3]. 925 F.2d 335 (9th Cir.1991).

[4]. *Id.* at 337 (citations and internal quotations omitted).

[5]. United States Sentencing Commission, *Guidelines Manual*, § 3B1.2, comment. (n.2) ("It is intended that the downward adjustment for a minimal participant will be used infrequently.").

## III. MINOR OR MINIMAL ROLE ADJUSTMENT

■ The district court stated that "the letter from the U.S. Attorney, Mr. Fong, dated October 27th, 1999, best articulates the rationale on why the minimal or minor role is not warranted in this case." Because two of the five reasons cited in this letter were clearly erroneous, we vacate Castaneda's sentence and remand for resentencing.

Fong's letter asserted that "[a]t the time of defendant's arrest, he admitted only to touching cooking trays or baking sheets. However, defendant's fingerprints were located on multiple pieces of lab equipment. . . ." At sentencing, Fong argued once again that when Castaneda was arrested, he said only that his fingerprints might appear on cooking trays or baking sheets and that it was only *after* he found out that his fingerprints were also on "substantial lab equipment" that he explained he might have touched those items too. The Government continues to press this point even on appeal, but we find it unsupported by the facts. In his first interview, which took place on March 25, 1998, Castaneda explained that his fingerprints "might be on cooking trays or baking sheets, because he took them out of Kline's vehicle and set them by the house" *and* that his fingerprints "might be on some of the glassware because he had touched it when he removed the equipment from Kline's vehicle." Thus, Castaneda's story did not evolve after the fact to explain away the fingerprints on the lab glassware.

We note that in his presentence interview in 1999, Castaneda explained the presence of his fingerprints on lab equipment differently. Then, he explained that "he saw beakers and various other equipment on the porch" and that "he put them in a box and placed them outside." This statement does seem to diverge from the account he gave in March 1998. Perhaps this inconsistency was what the U.S. Attorney meant to bring to the district court's attention. However, that was not in fact what he did. The U.S. Attorney claimed, and the district court apparently believed, that "[a]t the time of defendant's arrest, he admitted only to touching cooking trays or baking sheets . . . ; [h]owever, defendant's fingerprints were located on multiple pieces of lab equipment."

Another reason Mr. Fong gave the district court for denying Castaneda a role reduction is also fundamentally flawed. Fong wrote that Castaneda gave a "conflicting" statement during his presentence interview by stating that Kline was blaming him for the lab, when in fact "the Government is unaware of any such finger pointing by Kline." When Fong wrote this letter on October 27, 1999 the Government almost assuredly was aware that Kline was attempting to switch the blame. At some point, the Government obtained letters Kline wrote to Warren in February 1998, threatening him and urging him to testify that Castaneda was responsible for the lab. Castaneda's counsel obtained these letters from the Government through discovery and used them in a November 2, 1999, rebuttal letter to the district court, endeavoring to show that there was no "conflict" in Castaneda's statement at all.

Given that Castaneda's counsel called this discrepancy to the court's attention, it is possible (and perhaps even probable) that the court discounted it. We cannot say that for sure, however. At sentencing, the district court appeared to adopt all of the reasons Mr. Fong proffered, not just some of them.

The Government argues that even if one subtracts these controversial "conflicts," Castaneda is still not entitled to a remand for resentencing because the burden of proof is upon him, and he has not met that burden. It is true that Castaneda bears

the burden of proof and that the district court found him not credible. The problem, though, is that the district court found him not credible at least in part based on two "conflicts" which did not really exist, and by the Government's own admission, "[d]efendant's credibility was crucial to meeting his burden of proof." Once disabused of the notion that these conflicts exist, the court may still find that Castaneda's statements are not believable and that he has not otherwise met his burden of showing his minor or minimal role. As presently justified, however, the district court's sentence cannot stand. Accordingly, we vacate it and remand for resentencing.

VACATED AND REMANDED.

1. This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.