982 F.2d 1365
 UNITED STATES of America, Plaintiff-Appellee,
v.
Robert M. PETTY, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Melvin L. DeWITT, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Pasqual DEBRAINE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jordan Rodrigues QUINTAL, Jr., Defendant-Appellant.
 Nos. 90-30291 to 90-30294.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 7, 1992.
Decided Jan. 7, 1993.
As Amended May 11, 1993.*
 
 Richard J. Troberman, James L. Varnell, Ziontz, Chestnut, Varnell, Berley & Slonim, Seattle, WA, Frank J. Ragen, San Diego, CA, and David S. Marshall, Seattle, WA, for defendants-appellants.
 Jerry Diskin, Asst. U.S. Atty., Seattle, WA, for plaintiff-appellee.
 Appeal from the United States District Court for the Western District of Washington.
 Before: HUG, NOONAN and THOMPSON, Circuit Judges.
 DAVID R. THOMPSON, Circuit Judge:
 
 
 1
 Robert M. Petty, Melvin L. DeWitt, Pasqual Debraine and Jordan Rodrigues Quintal, Jr. challenge the use of a coconspirator's post-arrest statement against them at the sentencing phase of the criminal process. Other issues involving these defendants have been dealt with in an unpublished memorandum disposition. A separate sentencing issue raised by Petty and Quintal is dealt with in a separate opinion filed herewith.
 
 
 2
 The issue dealt with in this opinion is novel: In sentencing under the Sentencing Guidelines, may the court rely on the sworn, post-arrest admissions of an unavailable coconspirator given by him in the course of plea bargaining with the government?
 
 FACTS
 
 3
 Donald Craig Kessack was the kingpin in a conspiracy to distribute cocaine. After his arrest, he began plea negotiations with the government. On October 31, 1989, as part of these negotiations, he proffered a statement under oath to the government ("the Statement"). The proffer was made to induce the government to agree to a plea bargain. It was made on the condition that the government would not use the information against Kessack in any way other than to impeach him if he later gave testimony inconsistent with the proffer.
 
 
 4
 Kessack's negotiations failed. There was no plea agreement. He went to trial with his coconspirators, including the defendants mentioned in this appeal.
 
 
 5
 Kessack and the others were convicted on April 4, 1990. The government then moved for the sentencing of Kessack, and he was sentenced without the court seeing the Statement. Two weeks later, the sentencing hearing of the other defendants was held. The government called Kessack as a witness. He refused to testify on the ground of his privilege against self-incrimination. On the government's motion, the district court entered an order compelling him to testify. Kessack persisted in his refusal to answer any questions. The government then asked the court to unseal and review the Statement. The court did so and on July 13, 1990 notified the appellants that it had reviewed the Statement and had considered its content for purposes of sentencing.
 
 
 6
 On July 23, 1990 Kessack made a second sworn statement in which he cast doubt on the accuracy and reliability of his first Statement. The sentencing hearing then resumed on July 27, 1990. Based on information in the Statement, which the court determined was corroborated by other evidence, the court found that the entire conspiracy involved more than 50 kilograms of cocaine. The court sentenced Petty and Debraine on the 50-kilogram basis, and Quintal and DeWitt on the 15-49.99-kilogram basis. Quintal and DeWitt received the lower basis because the court determined that it could not find by a preponderance of the evidence that Quintal and DeWitt were involved during the entire period of the conspiracy, or that they dealt with 50 kilograms or more of cocaine, or that they knew or had reason to know that levels of 50 kilograms or more would be dealt with by the conspiracy. All four defendants appeal the use of the Statement.
 
 ANALYSIS
 
 7
 The appellants first contend that because the Statement is hearsay, the Confrontation Clause bars its consideration at sentencing.[1] We reject this argument.
 
 
 8
 In Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), the Supreme Court held that courts may consider hearsay at sentencing. The Sentencing Guidelines do not change this. The Guidelines explicitly allow a sentencing court to consider information relevant to the sentencing determination "without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). The commentary to section 6A1.3(a) provides:
 
 
 9
 In determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial. 18 U.S.C. § 3661. Any information may be considered, so long as it has "sufficient indicia or reliability to support its probable accuracy." United States v. Marshall, 519 F.Supp. 751 (D.C.Wis.1981) [sic], aff'd, 719 F.2d 887 (7th Cir.1983); United States v. Fatico, 579 F.2d 707 (2d Cir.1978). Reliable hearsay evidence may be considered. Out-of-court declarations by an unidentified informant may be considered "where there is good cause for the nondisclosure of his identity and there is sufficient corroboration by other means." United States v. Fatico, 579 F.2d at 713. Unreliable allegations shall not be considered. United States v. Weston, 448 F.2d 626 (9th Cir.1971).
 
 
 10
 U.S.S.G. § 6A1.3 comment.; see also United States v. Beaulieu, 893 F.2d 1177, 1180 (10th Cir.) (the Guidelines were not intended to place new restrictions on the sources of information available to the sentencing judge), cert. denied, 497 U.S. 1038, 110 S.Ct. 3302, 111 L.Ed.2d 811 (1990).
 
 
 11
 It is plain there is no language in the Guidelines that requires the application of the Confrontation Clause at sentencing. The question is whether the dramatic changes in the sentencing process brought about by the Guidelines create a constitutional right of confrontation where none existed before.
 
 
 12
 Of the circuits that have considered this question, all seven have held that the Confrontation Clause does not apply at sentencing, notwithstanding the enactment of the Guidelines.[2] These circuits are the First Circuit in United States v. Tardiff, 969 F.2d 1283, 1287 (1st Cir.1992); the Third Circuit in United States v. Kikumura, 918 F.2d 1084, 1102-03 (3d Cir.1990); the Fourth Circuit in United States v. Johnson, 935 F.2d 47, 50 (4th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 609, 116 L.Ed.2d 632 (1991); the Fifth Circuit in United States v. Marshall, 910 F.2d 1241, 1244 (5th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 976, 112 L.Ed.2d 1061 (1991); the Sixth Circuit in United States v. Silverman, 976 F.2d 1502 (6th Cir.1992) (en banc); the Eighth Circuit in United States v. Wise, 976 F.2d 393 (8th Cir.1992) (en banc); and the Tenth Circuit in United States v. Beaulieu, 893 F.2d 1177, 1180 (10th Cir.), cert. denied, 497 U.S. 1038, 110 S.Ct. 3302, 111 L.Ed.2d 811 (1990).
 
 
 13
 In holding that the Confrontation Clause does not apply at sentencing under the Guidelines, the Third Circuit noted that "the procedural protections afforded a convicted defendant at sentencing are traditionally less stringent than the protections afforded a presumptively innocent defendant at trial." United States v. Kikumura, 918 F.2d at 1102-03; see also United States v. Restrepo, 946 F.2d 654 (9th Cir.1991) (en banc) (preponderance of the evidence determines the existence of factors enhancing a sentence), cert. denied, --- U.S. ----, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992); United States v. Tejada, 956 F.2d 1256, 1263 (2d Cir.) (sentencing courts must consider evidence seized in violation of the Fourth Amendment in passing sentence under the Guidelines), cert. denied, --- U.S. ----, 113 S.Ct. 124, 121 L.Ed.2d 80 (1992).
 
 
 14
 Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), is not to the contrary. The Court in Specht held that trial-like procedural protections apply at sentencing only if an entirely new and more serious charge is added at sentencing without notice or "any 'hearing in the normal sense.' " McMillan v. Pennsylvania, 477 U.S. 79, 88, 106 S.Ct. 2411, 2417, 91 L.Ed.2d 67 (1986).
 
 
 15
 Judge Wellford, dissenting in the vacated opinion of United States v. Silverman, explained why Specht does not require application of the Confrontation Clause at sentencing:
 
 
 16
 First of all, [Specht ] specifically stated adherence to Williams v. New York. What was involved in Specht was a "radically different situation" where invocation of the Colorado law being challenged meant "making of a new charge leading to [enhanced] criminal punishment" without a hearing, presence of counsel, opportunity to be heard, or ability to offer evidence of his own. Specht, 386 U.S. at 608, 610, 87 S.Ct. at 1211, 1212. Specht simply held that Colorado law was deficient for due process reasons because "[i]t makes one conviction the basis for commencing another proceeding under another Act ... [as] an habitual offender and mentally ill" without "reasonable notice and an opportunity to be heard." Id. at 608, 610, 87 S.Ct. at 1211, 1212. There is simply no analogy to the situation presented under state law in Specht and the panoply of due process protection afforded these federal defendants at their sentencing hearings. Nor, as asserted by the majority, was Williams involved in a "nonadversary" system. A defendant, prior to sentencing guidelines (and after), was represented by counsel as an advocate to speak against any prosecution recommendation or unfavorable information and to offer useful information or evidence on behalf of the defendant.
 
 
 17
 United States v. Silverman, 945 F.2d 1337 (6th Cir.1991) (dissenting opinion) (footnote and emphasis omitted), vacated, 976 F.2d 1502 (6th Cir.1992) (en banc).[3]
 
 
 18
 Although the Confrontation Clause does not apply at sentencing, a defendant clearly has a due process right not to be sentenced on the basis of materially incorrect information. United States v. Reid, 911 F.2d 1456, 1463-64 (10th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 990, 112 L.Ed.2d 1074 (1991). Due process requires that some minimal indicia of reliability accompany a hearsay statement. Id. at 1464.
 
 
 19
 While the district court treated the Statement as "presumptively unreliable," it determined that when the Statement was considered with other corroborating evidence, the presumption of unreliability was rebutted. The Statement contained estimates that the conspiracy involved at least 50 kilograms of cocaine. The court indicated the evidence corroborating the Statement included:
 
 
 20
 Krohn's testimony with respect to what Kessack was telling him the level of activity was for this conspiracy. Statements made by Mr. Kessack to Agent McElderry about the level of activity and what he could produce. The testimony of Neil Stokes and admissions by Kessack to Stokes of the level of activities of the conspiracy. The post-arrest statements and admissions by defendant Brownwood. The post-arrest admissions by defendant Granger to witnesses Peter Constantine and Gary Annunziata that he was dealing a kilo a month for five years. The tape recorded admissions of the level of activity, exhibit 55, where one of the defendants said ten kilos a week for a six-month period. The testimony of the agents concerning the arrest of Mr. Petty in May of 1984 and the cash he had on his possession and the white powdery substance in his possession or in the possession of his traveling companion at that time. The testimony of other witnesses with respect to substantial amount of cash in Petty's possession in February of 1984.
 
 
 21
 Under all the circumstances, I feel substantial indicia of reliability has been presented by other corroborating evidence to rebut the presumption of unreliability of Mr. Kessack's sworn statement. I therefore feel that I should and must consider it. I have done so.
 
 
 22
 The district court's evaluation of reliability is reviewed under an abuse of discretion standard. See United States v. Ayers, 924 F.2d 1468, 1481 (9th Cir.1991). The court did not abuse its discretion in concluding that the Statement, when viewed in light of the corroborating evidence, was sufficiently reliable.
 
 
 23
 Furthermore, the sentencing court did not err in using evidence independent from the Statement to rebut the presumption of its unreliability. Although Idaho v. Wright, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), precludes a court from using extrinsic corroborating evidence to establish the reliability of hearsay at trial, it does not preclude the use of such evidence to establish the reliability of hearsay at sentencing. We agree with the Third Circuit that the Supreme Court's decision in Wright involved an interpretation of the Confrontation Clause and is thus applicable only at trial. United States v. Kikumura, 918 F.2d 1084, 1103 n. 21 (3d Cir.1990) ("In contrast to Wright, at a ... sentencing hearing, the court is free, and indeed is required, to consider other evidence that substantiates the proffered hearsay statement.").
 
 
 24
 Without squarely addressing the question, other circuit courts have assumed Wright 's ban on extrinsic corroborating evidence of hearsay applied to determine reliability at the trial phase only, not the sentencing phase. See, e.g., United States v. Zuleta-Alvarez, 922 F.2d 33 (1st Cir.1990) (hearsay evidence of quantity of drugs admissable at sentencing because corroborated by other witness testimony at grand jury and trial) cert. denied, Ramirez-Fernandez v. United States, --- U.S. ----, 111 S.Ct. 2039, 114 L.Ed.2d 123 (1991); United States v. Holmes, 961 F.2d 599, 603 (7th Cir.) (corroboration of hearsay statement in presentence report by trial testimony generates sufficient indicia of reliability to be considered by sentencing court), cert. denied, --- U.S. ----, 113 S.Ct. 232, 121 L.Ed.2d 168 (1992); United States v. Jewel, 947 F.2d 224 (7th Cir.1991) (court affirmed enhancement of offense level for obstruction of justice that was based on hearsay allegation corroborated by extrinsic evidence); United States v. Hubbard, 929 F.2d 307 (7th Cir.) (hearsay evidence of intent to cause bodily injury under U.S.S.G. § 2K1.4(c)(1) corroborated by physical evidence), cert. denied, --- U.S. ----, 112 S.Ct. 206, 116 L.Ed.2d 165 (1991); United States v. Rivers, 917 F.2d 369, 373 (8th Cir.1990) ("[w]hen the trial court is faced with sentence enhancement based upon hearsay evidence, we deem it advisable that the trial court exercise a more searching inquiry which may or may not serve to provide sufficient corroborating evidence to support the government's claim.").
 
 CONCLUSION
 
 25
 Neither the Confrontation Clause nor due process requirements precluded the sentencing court from considering the Statement. The Confrontation Clause does not apply at sentencing to preclude a court from considering hearsay evidence. Due process requires that hearsay bear some minimal indicia of reliability in order to be considered at sentencing. Although the Statement was presumptively unreliable, the presumption of its unreliability was rebutted by extrinsic corroborating evidence, which the district court properly considered at the time of sentencing.
 
 
 26
 The challenges to the sentences of Petty, DeWitt, Debraine, and Quintal, on the grounds set forth in this opinion, are rejected. However, pursuant to our unpublished memorandum disposition and our separate opinion filed herewith, the sentences of Petty, DeWitt, Debraine, and Quintal are remanded to the district court for reconsieration.
 
 
 27
 Sentences of Petty, DeWitt, Debraine, and Quintal REMANDED.
 
 NOONAN, Circuit Judge, dissenting:
 
 28
 With admirable desire for harmony with other circuits and with an understandable unwillingness to challenge the conventional wisdom suggested by their decisions, the court has declined to recognize that the United States Constitution has been violated by the sentencing in this case. Harmony and deference to convention are important, but not so important as the fundamental principles of our government. Fundamental principles call for a different result.
 
 The Confrontation Clause
 
 29
 The Sixth Amendment, part of our Bill of Rights, declares: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." An initial question is whether sentencing is part of a criminal prosecution. It has been held that the Sixth Amendment right to jury trial does not apply at sentencing, but that conclusion was reached by taking into account the historic exclusion of juries from the sentencing process. Spaziano v. Florida, 468 U.S. 447, 459, 104 S.Ct. 3154, 3162, 82 L.Ed.2d 340 (1984). In contrast, the Sixth Amendment right to counsel at a sentencing hearing has been established. Mempa v. Rhay, 389 U.S. 128, 134-35, 88 S.Ct. 254, 257, 19 L.Ed.2d 336 (1967). The recognition of this right involved the acknowledgment that sentencing is one of "the various stages in a criminal proceeding." Id. at 134, 88 S.Ct. at 256.
 
 
 30
 If sentencing is part of a criminal proceeding in determining the right to counsel, it follows that sentencing is also a criminal prosecution in determining the right to confront witnesses. This conclusion is the stronger because "the right to the assistance of counsel has been understood to mean that there can be no restrictions upon the function of counsel in defending a criminal prosecution in accord with the traditions of the adversary factfinding process...." Herring v. New York, 422 U.S. 853, 857, 95 S.Ct. 2550, 2553, 45 L.Ed.2d 593 (1975). What is the point of having counsel if counsel cannot exercise an essential function of counsel--the cross-examination of the witnesses against counsel's client?
 
 
 31
 The majority rightly observes that no decision of the United States Supreme Court requires that the Confrontation Clause be applied in sentencing. The court wrongly concludes that it should not be applied in the present case. The wrong conclusion is reached by ignoring two fundamental facts of contemporary criminal law in the federal courts.
 
 
 32
 First. The normal outcome of a federal criminal prosecution is a plea of guilty. In 318,737 federal investigations in the period 1987-1989, there were 165,757 indictments, and there were 116,619 guilty pleas. Eighty-three percent of criminal prosecutions resolved by an adjudication of guilt terminated without trial. U.S. Sentencing Commission, The Federal Sentencing Guidelines: A Report on the Operations of the Guidelines Sys. and Short-Term Impacts on Disparity in Sentencing, Use of Incarceration, and Prosecutorial Discretion and Plea Bargaining 69 (Dec. 1991). In all of these instances the only significant event in the criminal prosecution was the sentencing. To deny that the sentencing process is part of a criminal prosecution is to cut out the guts of criminal prosecution as it is conducted in our courts. By the same stroke the Sixth Amendment is struck and crippled.
 
 
 33
 In another context, it has been observed that there is a tendency for the courts to build Potemkin Villages--that is, attractive but illusory structures that suggest a healthy state of constitutional safeguards that do not actually exist. Michael W. McConnell, Free Exercise Revisionism and the Smith Decision, 57 U.Chi.L.Rev. 1109, 1110 (1990). To pretend that we are assuring the rights of the accused in "all criminal prosecutions," but to deny the confrontation right in eighty-three percent of such prosecutions, is to create a Potemkin Village. We pretend to solicitude for the accused's rights. We deny them in fact.
 
 
 34
 Second. The pretense is the more subversive because the facts accepted as established at the sentencing hearing determine the sentence, in some instances with mathematical exactitude. In drug cases, the quantity of drugs possessed or distributed mechanically sets the limits of the sentence that must be given. U.S.S.G. § 2D1.1. In this respect, sentencing under the Sentencing Guidelines is wholly different from sentencing before 1987 where the district court had an almost unrestrained discretion to sentence within the broad limits set by the relevant criminal statute. See Stanley A. Weigel, The Sentencing Reform Act of 1984: A Practical Appraisal, 36 UCLA L.Rev. 83 (1988).
 
 
 35
 To fail to take account of the radical change effected by the Sentencing Guidelines, and to fail to see that most criminal prosecutions are, in fact, hearings on the sentence to be imposed is to overlook the major features of a criminal trial in our contemporary federal system.
 
 
 36
 The majority opinion makes the point that the Sentencing Guidelines themselves explicitly allow a sentencing court to consider information without regard to its admissibility and "there is no language in the Guidelines" requiring the application of the Confrontation Clause. To use the Sentencing Guidelines to interpret the Confrontation Clause is to let the tail wag the dog. The Sentencing Guidelines are the work of an ad hoc committee. The Constitution sets the structure of our system. The Guidelines must yield to the Constitution, not the Constitution to the Guidelines.
 
 
 37
 Traditionally the district courts have considered a wide range of information, and strict compliance with the Confrontation Clause would restrict this range. This observation stands as an objection to respecting the Confrontation Clause here. Two answers make the objection irrelevant. One is that the situation has changed with the Sentencing Guidelines. The other is that the Confrontation Clause has never been construed literally but, while remaining a vital principle, has shown a certain elasticity in application. See Idaho v. Wright, 497 U.S. 805, 813-14, 110 S.Ct. 3139, 3145-46, 111 L.Ed.2d 638 (1990). If the Confrontation Clause applied to bar the kind of self-serving hearsay admitted in this case, it would not follow that every kind of hearsay must therefore be barred in sentencing.
 
 
 38
 Here is how Kessack himself later described his statement: He had been advised that he was facing a possible sentence in excess of 30 years and that "the only way" he could hope for a lesser sentence "was to cooperate with the government." He then "agreed to provide a statement to the government in the hope that I could convince the government to recommend a lesser sentence for me." The government lawyers
 
 
 39
 told me that if I minimized my role, or the role of others, that I would be "worthless as a witness" and that they would have 'no interest in dealing with me'. They also told me that it didn't matter how many kilos I said were involved, since nothing I said could or would be used against me.
 
 
 40
 . . . . .
 
 
 41
 The government insisted that I could remember things, even when I knew that I couldn't.
 
 
 42
 . . . . .
 
 
 43
 I was especially confused about the amounts of drugs involved and the sources of the drugs. I can't really be sure of the total amounts involved and the sources of cocaine.
 
 
 44
 In this case, the hearsay was of a character that we have stamped as inherently untrustworthy. United States v. Magana-Olvera, 917 F.2d 401, 409 (9th Cir.1990). It was a statement, like the statements in that case, made by a defendant "under custody." Id. It was a statement, like the statements in that case, made "in an attempt to curry favor from the federal authorities." Id. It was a statement, like the statements in that case, designed to produce a plea bargain. Id. It was a statement, unlike the statements in that case, disavowed by the man who made it. It was a statement not at all against Kessack's interest because by its terms it could not be used against him except to impeach him if he later testified. The kingpin, Kessack was in a position to save his own skin by implicating deeply almost any one of his minions that he chose to throw to the government. No one would care to put credence in such a man's accusations, proffered in conditions under which he stood to profit by giving the prosecution some easy guesses about the quantity of drugs in which he dealt.
 
 
 45
 The district court and the court on this appeal have attempted to save the credibility of the statement by finding it corroborated by evidence extrinsic to the statement itself and extrinsic to the circumstances in which the statement was made. The district court took account of testimony by witnesses and admissions by Kessack and other conspirators to reach the conclusion that the conspiracy involved at least 50 kilos of cocaine. To the extent that this evidence was probative of this quantity, it was unnecessary for the district court to rely on Kessack's statement; if all these other pieces of admissible evidence did, in fact, establish a quantity over 50 kilos, why refer to Kessack's statement at all? On the other hand, if only Kessack's statement established the specific quantity, these other pieces of evidence were not corroborative of the precise information gathered from his statement and the specific number derived from it remained as much of a guess, motivated by self-interest, as it did before the district court looked at the "corroborating" evidence.
 
 
 46
 Salvaging the statement by this kind of extrinsic evidence is in any event inconsistent with the application of the Confrontation Clause. For hearsay to be accepted there must be "particularized guarantees of trustworthiness," found by considering "the totality of the circumstances." Idaho v. Wright, 497 U.S. at 819, 110 S.Ct. at 3148. But the totality of the circumstances "include only those that surround the making of the statement and that render the declarant particularly worthy of belief." Id. The circumstances surrounding the making of this statement make the declarant particularly worthy of unbelief. The rank violation of the Confrontation Clause should result in a remand for resentencing of the defendants affected by the unreliable hearsay.
 
 
 47
 The purpose of the Confrontation Clause is to present "a barrier against flagrant abuses, trials by anonymous accusers, and absentee witnesses." California v. Green, 399 U.S. 149, 179, 90 S.Ct. 1930, 1946, 26 L.Ed.2d 489 (1970) (Harlan, J., concurring). This understanding of the Confrontation Clause has recently been repeated in the same breath in which a certain flexibility in its application was acknowledged. Maryland v. Craig, 497 U.S. 836, 851, 110 S.Ct. 3157, 3166, 111 L.Ed.2d 666 (1990). What Justice Harlan and the Court in Craig recognized as a type of "flagrant abuse" in the context of a trial occurs here--"testimony" by an absentee witness; not only by an absentee witness but an absentee witness who had motive to lie the first time and later claimed that he had been confused and unaware about the quantity of drugs and said he knew facts when he could not remember them! The right at stake here goes to the heart of criminal justice--the right not to lose one's liberty on the basis of unreliable accusation.
 
 The Due Process Clause
 
 48
 Reliance is placed by the majority on Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), where it was held not to be a violation of due process for a judge, choosing between a sentence of death and life imprisonment, to use a wide variety of out-of-court information. Williams reached this result, the Court said, because the Court was reluctant to "undermine modern penological procedural policies." Id. at 250, 69 S.Ct. at 1084. Those policies were to have the punishment fit the individual and not merely the crime, with the result that indeterminate sentences and the use of parole were emphasized and rehabilitation of the defendant was a major goal. Id. at 247-249, 69 S.Ct. at 1083-1084. In that more innocent world, probation workers were viewed as "trained" to aid offenders, id. at 249, 69 S.Ct. at 1084, and their report was seen as impartial, not adversarial.
 
 
 49
 The case is substantially different under the Sentencing Guidelines with their focus on a uniform punishment for particular crimes, with the diminishing confidence in rehabilitation as a purpose of incarceration, and the subjection of probation reports to adversarial hearings. To rely on a decision made in a different world 40 years ago as the measure of due process is to ignore the realities of the present system. See Note, An Argument for Confrontation Under the Federal Sentencing Guidelines, 105 Harv.L.Rev. 1880, 1885 (1992).
 
 
 50
 The Due Process Clause requires that defendants not be sentenced based on "misinformation of constitutional magnitude". United States v. Tucker, 404 U.S. 443, 447, 92 S.Ct. 589, 592, 30 L.Ed.2d 592 (1972); see also Gardner v. Florida, 430 U.S. 349, 358, 97 S.Ct. 1197, 1205, 51 L.Ed.2d 393 (1977) (plurality) (due process applies during sentencing). It violates due process to be sentenced on the basis of materially false or unreliable information. United States v. Messer, 785 F.2d 832, 834 (9th Cir.1986). Material information is "unreliable" if it "lacks 'some minimal indicium of reliability beyond mere allegation.' " United States v. Ibarra, 737 F.2d 825, 827 (9th Cir.1984) (quoting United States v. Baylin, 696 F.2d 1030, 1040 (3rd Cir.1982)); United States v. Hull, 792 F.2d 941, 942 (9th Cir.1986).
 
 
 51
 Kessack's statement is unalloyed allegation. It is the sort of self-serving statement that desperate men make to save themselves from a lifetime of imprisonment. The Supreme Court has refused to deviate from "the time-honored teaching that a co-defendant's confession inculpating the accused is inherently unreliable". Lee v. Illinois, 476 U.S. 530, 546, 106 S.Ct. 2056, 2065, 90 L.Ed.2d 514 (1986). A statement that is "inherently unreliable" cannot be rehabilitated.
 
 
 52
 The majority opinion concedes that the defendant has a due process right not to be sentenced on the basis of materially incorrect information. How does one determine if information is materially incorrect except by first examining the reliability of the person offering the information and the circumstances in which it was offered? It has been recognized that the denial of cross-examination calls into question "the ultimate 'integrity of the fact-finding process.' " Chambers v. Mississippi, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973) (quoting Berger v. California, 393 U.S. 314, 315, 89 S.Ct. 540, 541, 21 L.Ed.2d 508 (1969)). The observation is made in terms of the Confrontation Clause, but if the ultimate integrity of the fact-finding process has been undermined, due process itself has been denied. What our system puts forward as " 'an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal,' " Chambers, 410 U.S. at 295, 93 S.Ct. at 1046 (quoting Pointer v. Texas, 380 U.S. 400, 405, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965)), is equally an essential and fundamental requirement of fairness in a sentencing procedure where the sentence is determined by the facts accepted as true. It violates not only the Confrontation Clause but the principle of fair play which animates our entire system of criminal justice to let Kessack's self-serving statement determine his co-defendants' sentence.
 
 
 53
 I respectfully dissent.
 
 
 
 *
 The amending order is published at 992 F.2d 1015
 
 
 [1]
 "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. Const. amend. VI
 
 
 [2]
 Three other circuits have held that the due process clause does not require confrontation at sentencing. These circuits are the Second Circuit in United States v. Carmona, 873 F.2d 569, 574 (2nd Cir.1989); the Ninth Circuit in United States v. Notrangelo, 909 F.2d 363, 365-66 (9th Cir.1990); and the Eleventh Circuit in United States v. Giltner, 889 F.2d 1004, 1008 (11th Cir.1989)
 
 
 [3]
 We quote from Judge Wellford's dissent in the vacated Silverman opinion not because that opinion has precedential value, but to give Judge Wellford credit for his reasoning