**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Charles Robinson BERRY,**
**Defendant–Appellant.**

**No. 00–30222.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 11, 2001

Filed Aug. 2, 2001

---

Timothy D. Kosnoff, Bellevue, Washington, for the defendant-appellant.

Helen J. Brunner, United States Attorney's Office, Seattle, Washington, for the plaintiff-appellee.

Before: FARRIS, TROTT, and BERZON, Circuit Judges.

TROTT, Circuit Judge:

Defendant Charles Robinson Berry appeals his thirty-month sentence for possession of stolen mail in violation of 18 U.S.C. §§ 1708 and 2. Berry challenges the district court's finding that he was an organizer or leader for purposes of United States Sentencing Guidelines § 3B1.1(a) ("U.S.S.G. § 3B1.1(a)"). We have jurisdiction pursuant to 28 U.S.C. § 1291, and AFFIRM the sentence imposed by the district court.

## I

## Background

On December 20, 1999, a Washington State Patrol trooper conducted a routine traffic stop after observing Berry "burning rubber" and speeding. The officer learned that Berry was driving with a suspended driver's license and placed him under arrest. A search of Berry's vehicle incident to his arrest revealed numerous pieces of stolen mail around the driver's seat. Berry told the officer that the car and the mail inside it belonged to Michael Froman. Berry was apparently released from police custody without further inquiry into the stolen mail.

Nine days later, a King County Sheriff deputy investigating a report that stolen mail had been found on rural property observed two men standing by a vehicle

with its hatch open. Upon seeing the deputy, the two individuals slammed the hatch closed and ran into a nearby residence. This suspicious behavior prompted the deputy to contact the owner of the residence, who informed the officer that the two men were Berry and Israel Osborne. The deputy returned to the car and saw a large quantity of mail through the hatchback window. After obtaining consent from the vehicle's owner to search the car, the deputy recovered hundreds of pieces of stolen mail.

On January 10, 2000, Osborne was located and interviewed by King County police and postal investigators regarding the stolen mail that was recovered from the hatchback. Osborne confessed to participating with Berry and a woman named Jennifer Lockwood in the theft of mail and the negotiation of stolen checks. Osborne advised the interviewing officers that he was given stolen checks by Berry, who instructed him to deposit the checks into his personal bank account and withhold $100 in cash from each check. Osborne would then give the cash to Berry in exchange for twenty dollars and drugs. Osborne also informed the police that he had burned approximately 200 pieces of stolen mail at the instruction of Berry.

Subsequently, on January 31, 2000, Berry allegedly solicited the aid of a woman named Laureen Johnson to purchase a set of tires and rims from a Les Schwab Tire store with a stolen credit card. When Johnson attempted to use the stolen credit card, the Les Schwab employees immediately notified the police. Although Johnson was quickly apprehended, Berry successfully fled the scene upon the officers' arrival. The police searched Johnson and found her to be in possession of Berry's identification, a partial book of stolen checks, and five other stolen credit cards. Johnson informed the police that Berry forced her to accompany him to the tire store and use the stolen credit card because the card bore a woman's name. Johnson stated that she aided Berry because he had assaulted her in the past when she had refused to engage in illegal activity and that she feared he would do it again. She allegedly was not to receive any compensation from Berry for her efforts. Johnson also confessed to her involvement in prior mail thefts with Berry and admitted that she had allowed him to run stolen checks through her bank account.

Berry was arrested shortly thereafter and was interviewed by police investigators. Berry admitted to stealing mail on several occasions and depositing stolen checks into his own account and to being involved in the deposit of stolen checks into the accounts of Osborne, Froman, and a homeless, mentally handicapped individual named Doug Cowin. Regarding the purchase of tires with a stolen credit card, Berry informed police that he brought Johnson with him to carry out the transaction because the card was in a woman's name. He stated that he told Johnson that if she bought the tires with the stolen credit card, he would allow her to use the card to buy things for herself.

Froman later revealed that Berry had approached him about the possibility of running stolen checks through his personal bank account. Froman accepted Berry's proposal and, like Osborne and Johnson, deposited stolen checks given to him by Berry into his personal account. Also paralleling the testimony of Osborne and Johnson, Froman advised the police that Berry reaped the majority of the proceeds from this criminal activity.

On February 24, 2000, a grand jury in the Western District of Washington returned a one-count indictment charging Berry, Lockwood, and Osborne with possession of stolen mail in violation of 18

U.S.C. §§ 1708 and 2. Berry entered a guilty plea to this charge on April 20, 2000. The guilty plea came pursuant to a plea agreement whereby the government agreed (1) not to prosecute Berry for any other offenses previously committed in the district; (2) to recommend a downward adjustment in the offense level for acceptance of responsibility; and (3) to reserve the total loss figure for determination at sentencing.

Following the entry of Berry's guilty plea, the court ordered the preparation of a presentencing report ("PSR"). Relying in large measure on the separate statements of his partners in crime, the PSR recommended that because Berry was the leader or organizer of criminal activity that involved five or more participants, his offense level should be increased four levels pursuant to U.S.S.G. § 3B1.1(a). Berry entered an objection to the PSR that was supported by a personal declaration presenting facts undermining the applicability of U.S.S.G. § 3B1.1(a). In the declaration, Berry stated that Froman, Cowin, Johnson and Osborne all solicited him to run stolen checks through their accounts. He also stated that he did not receive the majority of the money recovered from the stolen checks, but rather that the person who deposited the stolen checks into their account received between seventy and eighty percent of the recovered funds.

The sentencing hearing for Berry was held on July 7, 2000. Neither Berry nor the government requested that the court conduct an evidentiary hearing prior to sentencing. At the sentencing hearing, Berry reiterated his objection to the PSR's recommendation that his sentence be enhanced pursuant to U.S.S.G. § 3B1.1(a). Specifically, Berry argued that the only evidence supporting the application of the enhancement came from unreliable hearsay statements made by his co-defendants. Berry also asked the court to reduce his

criminal history category from a III to a I so as to more accurately reflect the true nature of his criminal history. Expressly relying on the findings in the PSR, the district court rejected Berry's argument regarding the applicability of U.S.S.G. § 3B1.1(a), stating that "the government has shown by a preponderance of the evidence that the four-level enhancement for leadership role is warranted." The court did, however, agree with Berry that a criminal history category of III was too severe, and reduced Berry's criminal history category to II. The court then imposed a sentence of thirty months' imprisonment, three years' supervised release, and ordered Berry to pay restitution in the amount of $14,264.48.

## II

### Analysis

Berry appeals the sentence imposed by the district court on the grounds that (1) the district court erroneously relied upon the hearsay statements of his co-defendants for sentencing purposes, and (2) there was insufficient evidence to support the district court's finding that he was an organizer or leader under U.S.S.G. § 3B1.1(a). As explained below, both claims are baseless.

a. *The district court properly relied on the hearsay statements of Berry's co-defendants in concluding that Berry was an organizer or a leader for purposes of U.S.S.G. § 3B1.1.*

Berry challenges the district court's reliance on the hearsay statements of his co-defendants, alleging that: (1) the statements were inherently unreliable in that they were self-serving statements designed to divert blame away from the co-defendants and onto Berry; (2) the court erred in failing to make specific findings regarding the reliability of such state-

ments; and (3) the court should have conducted an independent evidentiary hearing to enable it to fairly judge the reliability of the hearsay statements.

■ We review the district court's evaluation of reliability under an abuse of discretion standard. *See United States v. Petty*, 982 F.2d 1365, 1369 (9th Cir.1993).

■ The district court did not abuse its discretion in relying on the hearsay statements of Berry's co-defendants in enhancing Berry's sentence under U.S.S.G. § 3B1.1(a). In *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), the Supreme Court held that courts may consider hearsay at sentencing. The Sentencing Guidelines follow suit by allowing a sentencing court to consider information relevant to the sentencing determination "without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). We have qualified the admissibility of hearsay at sentencing by requiring that such statements be accompanied by "some minimal indicia of reliability." *Petty*, 982 F.2d at 1369.

■ Berry points to the requirement that hearsay statements evidence reliability, arguing that the district court erred in not conducting *sua sponte* an evidentiary hearing on this issue. While we normally review the district court's decision not to hold an evidentiary hearing under Rule 32(c)(1) for an abuse of discretion, *United States v. Houston*, 217 F.3d 1204, 1209 (9th Cir.2000), because Berry failed to request an evidentiary hearing in district court we review for plain error, *cf. United States v. Sahakian*, 965 F.2d 740, 741 (9th Cir.1992). We find no plain error on this record. Where, as here, "the district court allows the defendant to rebut the recommendations and allegations of the presentence report either orally or through the submis-

sion of written affidavits or briefs, Rule 32 does not require an evidentiary hearing." *United States v. Stein*, 127 F.3d 777, 780–81 (9th Cir.1997). *Cf. Farrow v. United States*, 580 F.2d 1339, 1360 (9th Cir.1978) (holding that "due process does not require an evidentiary hearing to establish the veracity of all information in a presentence report before it may be considered by the sentencing judge").

■ Berry argues in the alternative that because the district court did not hold an evidentiary hearing, it was compelled by Federal Rule of Criminal Procedure 32(c)(1) to make express factual findings regarding the reliability of his co-defendants' hearsay statements. We do not read Fed.R.Crim.P. 32(c)(1) so broadly.

■ While we encourage and appreciate express findings by a district court regarding the reliability of hearsay statements introduced at sentencing, we have never held that the failure to articulate such findings requires reversal even where the reliability of the hearsay statements is apparent from the record. We agree with the opinion of the Eleventh Circuit holding that reversal is not required in these circumstances. *See United States v. Gordon*, 231 F.3d 750, 761 (11th Cir.2000) ("While it may be advisable and in some instances necessary for a district court to make distinct findings regarding the reliability of hearsay statements used at sentencing, the absence of such findings does not necessarily require reversal or remand where the reliability of the statements is apparent from the record."); *cf. United States v. Govan*, 152 F.3d 1088, 1096 (9th Cir. 1998) ("A district court is not required to make specific factual findings to support an aggravating role adjustment.").

■ One factor evidencing the reliability of hearsay statements by co-defendants is external consistency. Specifically, hearsay statements by co-defendants that are

consistent with each other may be deemed sufficiently reliable even if such statements are self-serving and contrary to the testimony of the defendant. *See, e.g., United States v. Connolly*, 51 F.3d 1, 5 (1st Cir. 1995) (holding that district court properly found co-defendants' hearsay statements to be reliable where those statements, while at odds with the defendant's version of events, were generally consistent with each other); *Gordon*, 231 F.3d at 760 ("Although [the co-defendants]-all of whom had pled guilty by that point-may have had an interest in shifting the primary blame to [the defendant], each of the co-defendants' statements was consistent.... This consistency lends the statements reliability.").

The hearsay statements by Berry's codefendants were sufficiently corroborated by each other to provide the minimal indicia of reliability necessary to qualify the statements for consideration by the district court during sentencing. Osborne, Johnson and Froman all stated uniformly that Berry solicited them to pass stolen and forged checks through their personal bank accounts. The co-defendants also all attested to the fact that Berry would retain the majority of the ill-gotten proceeds despite the co-defendants' frequent assumption of the greatest risks in perpetrating the crimes—i.e., forging the instruments and using their personal accounts to cash the checks.

Together, this evidence was more than sufficient to support the district court's determination that Berry was an organizer or leader for purposes of U.S.S.G. § 3B1.1(a).

b. *The record contains sufficient evidence to support the district court's enhancement of Berry's sentence pursuant to U.S.S.G. § 3B1.1.*

 Section 3B1.1(a) of the Sentencing Guidelines provides that a district court may increase a defendant's offense level by four levels if the defendant was an "organizer or leader of criminal activity that involved five or more participants or was otherwise extensive...." U.S.S.G. § 3B1.1(a). To impose an enhancement under U.S.S.G. § 3B1.1(a), the district court must determine that "the defendant exercised some control over others involved in the commission of the offense [or was] responsible for organizing others for the purpose of carrying out the crime." *United States v. Harper*, 33 F.3d 1143, 1151 (9th Cir.1994). "In determining whether a defendant controlled or organized others, the district court should consider the following factors: (1) the exercise of decision making authority, (2) the nature of participation in the commission of the offense, (3) the recruitment of accomplices, (4) the claimed right to a larger share of the fruits of the crime, (5) the degree of participation in planning or organizing the offense, (6) the nature and scope of the illegal activity, and (7) the degree of control and authority exercised over others." *United States v. Narte*, 197 F.3d 959, 966 (9th Cir.1999) (internal quotations omitted).

 We review for clear error a district court's determination that a defendant was an "organizer or leader" for purposes of enhancement under U.S.S.G. § 3B1.1. *See United States v. Lopez–Sandoval*, 146 F.3d 712, 716 (9th Cir.1998).

 The district court's conclusion that Berry was an organizer or leader under U.S.S.G. § 3B1.1(a) is not clearly erroneous. The criminal activity Berry engaged in involved five participants—namely, Berry, Froman, Cowin, Johnson and Osborne. There are also facts to indicate that Berry controlled or organized others in the enterprise. For example, Osborne informed investigators that Berry recruited him to steal mail and cash stolen checks. Os-

borne stated that Berry told him to deposit stolen checks into his bank account and withhold $100 in cash from each check, $80 of which was to go to Berry. Osborne also told the investigators that Berry instructed him to burn over 200 pieces of stolen mail. Furthermore, Froman advised police that Berry solicited him to run nearly $16,000 in stolen checks through Froman's personal checking account. Finally, Johnson reported that Berry forced her to accompany him to the Les Schwab Tire store to buy him tires and rims with a stolen credit card. While the evidence may not be overwhelming, there are sufficient facts in the record evidencing Berry's control over, and organization of, his co-defendants to support the district court's finding.

### III

### Conclusion

The district court did not abuse its discretion in relying on the hearsay statements of Berry's co-defendants during sentencing. Its conclusion that Berry was an organizer or leader under U.S.S.G. § 3B1.1(a) was not clearly erroneous.

**AFFIRMED.**