**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                *Plaintiff-Appellee*,

v.

ARMANDO REYES VERA, AKA
Mando, AKA Armando Vera,
                *Defendant-Appellant.*

No. 16-50364

D.C. No.
8:08-cr-00280-
JVS-2

UNITED STATES OF AMERICA,
                *Plaintiff-Appellee*,

v.

SALVADOR REYES VERA,
                *Defendant-Appellant.*

No. 16-50366

D.C. No.
8:08-cr-00280-
JVS-1

OPINION

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted May 17, 2018
Pasadena, California

Filed June 25, 2018

Before:  Kim McLane Wardlaw, Jacqueline H. Nguyen,
and John B. Owens, Circuit Judges.

Opinion by Judge Owens

## SUMMARY[*]

### Criminal Law

The panel vacated two defendants' sentences imposed on remand for resentencing in a drug-trafficking conspiracy case, and again remanded for resentencing.

In the prior appeal, this court affirmed the convictions but remanded the sentences because unreliable evidence had been presented to the jury.

The panel held that the district court, on remand, committed reversible error by relying heavily upon co-conspirator plea agreements to determine the drug quantities attributable to the defendants on the ground that the plea agreements were reliable statements against interest under Fed. R. Evid. 804(b)(3). The panel held that district courts may not rely solely on Rule 804(b)(3) to use non-self-inculpatory statements in a co-conspirator's plea agreement to determine a defendant's drug-quantity liability.

The panel recognized that co-defendant plea agreements could have some probative value at sentencing if otherwise

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

supported by sufficient indicia of reliability. On this record, the panel concluded there were not sufficient indicia of reliability to support the plea agreements' probable accuracy as to drug quantity, and that the factual bases in the plea agreements were not corroborated by other information that made their reliability apparent.

## COUNSEL

Thomas Paul Sleisenger (argued), Los Angeles, California, for Defendant-Appellant Armando Reyes Vera.

Gretchen Fusilier (argued), Carlsbad, California, for Defendant-Appellant Salvador Reyes Vera.

Bram M. Alden (argued), Assistant United States Attorney; Lawrence S. Middleton, Chief, Criminal Division; United States Attorney's Office, Los Angeles, California; for Plaintiff-Appellee.

## OPINION

OWENS, Circuit Judge:

Defendants (and brothers) Salvador and Armando Vera appeal their sentences for drug-trafficking conspiracy. We previously affirmed their convictions but remanded their sentences because unreliable evidence had been presented to the jury. *See United States v. Vera*, 770 F.3d 1232, 1253 (9th Cir. 2014) (*Vera I*). On remand, the district court used evidence of questionable value in determining the drug quantities attributable to each defendant, so we again vacate and remand for resentencing.

## I.  FACTUAL       BACKGROUND       AND PROCEDURAL HISTORY

### A.  Vera I

As our previous opinion detailed the crimes of the Vera brothers, we will get to the point.  In October 2008, the Veras, along with thirteen co-conspirators, were charged with conspiracy to distribute narcotics in violation of 21 U.S.C. §§ 841(a)(1), 846.  Their thirteen co-conspirators eventually pled guilty, but the Veras proceeded to trial under a superseding indictment.  The jury was tasked with deciding if the Veras were guilty of (1) conspiring to distribute controlled substances and (2) using a minor in drug operations.  *Vera I*, 770 F.3d at 1235.  And if the answer was yes for either charge, then the jury would determine the quantity of drugs attributable to the defendants.  *Id.* at 1237.  After a five-day trial, the jury found the Veras guilty and returned a special verdict holding them responsible for at least: 100 grams of heroin, 500 grams of cocaine, and 280 grams of cocaine base.  *Id.*  With those findings in hand, the district court sentenced Salvador to 360 months' and Armando to 210 months' imprisonment.[1]  *Id.*

On appeal, we affirmed their convictions but reversed their sentences due to the testimony of the government's "key witness," FBI Special Agent Lavis.  *Id.* at 1236.  Lavis opined about the government's "primary evidence" against the Veras: over seventy wiretapped phone calls that were played or read before the jury.  *Id.*  Aside from one proven sale of heroin by Armando, "Lavis' opinions interpreting the wiretapped calls were the only evidence of specific

---

[1] For consistency with *Vera I*, we refer to the defendants by their first names, Salvador and Armando.

quantities at trial." *Id.* at 1243. This opinion testimony, we concluded, "did not rest on reliable methods." *Id.* at 1247. In some instances, Lavis opined on the meaning of ambiguous terms based on false assumptions. *Id.* at 1247–48. At one point, Lavis construed a call with neither direct nor encoded words as a drug transaction. *Id.* at 1248. We recognized that this "opinion plainly rested on nothing more than speculation." *Id.*

And because "[t]he defendants' lengthy sentences" and statutory mandatory minimums "depended on [the jury's] drug quantity findings," *id.* at 1235, 1249, we concluded that resentencing was required[2]—either with a new sentencing jury, or by the district court under the default sentencing provisions in 21 U.S.C. § 841(b)(1)(C), *id.* at 1253. The government elected to proceed before the district court.[3]

### B. Resentencing

Rather than remedy Lavis' improper methodology or call the Veras' co-conspirators to testify about their dealings with the defendants, the government instead relied heavily upon the co-conspirators' plea agreements to establish the quantities of drugs attributable to the Vera brothers. In effect, the government swapped out the wiretapped calls for

---

[2] We also vacated the sentences because the district court failed to require that the government lay an adequately specific foundation for Lavis' testimony or to instruct the jury that Lavis was testifying as both an expert and lay witness. *Vera I*, 770 F.3d at 1243–44.

[3] Proceeding without a sentencing jury meant that the Veras faced (1) no mandatory minimum sentence, and (2) a smaller statutory maximum. *See* 21 U.S.C. § 841(b)(1)(C). But for practical purposes, there was no difference to the Vera brothers—Salvador still faced a sixty-year statutory maximum due to a prior conviction, and Armando a forty-year statutory maximum. *See* 21 U.S.C. § 861(b).

the plea agreements. The district court recognized as much in its sentencing order. It explained that it found the government's sentencing memoranda "more credible" than the presentence investigation reports and Armando's sentencing memorandum because it was the "least dependent on interpretation of [the] recordings." It also recognized that the plea agreements were the government's "single most significant data source."

These plea agreements, which the government drafted, frequently pointed fingers at the Veras. Of the twelve plea agreements relied upon by the government, ten named Armando as a co-conspirator. Five of those also named Salvador. The factual bases of some of the plea agreements referenced the Veras more specifically. One provided that a co-conspirator "conspired to distribute between five and 20 grams of cocaine base with Armando," and another stated that a co-conspirator "obtained cocaine base" from him. These and several other plea agreements also catalogued wiretapped calls between both Vera brothers and their co-conspirators.

Over the defendants' objections, the district court found these plea agreements reliable. Citing Federal Rule of Evidence 804(b)(3), (the statement-against-interest exception to the hearsay rule), the district court concluded that the co-conspirators' "admissions in [the] plea agreement[s] clearly amount[ed] to declarations against interest." "Moreover," the district court explained, "the Government provide[d] specific corroboration for a number of the plea agreements."

After applying some additional sentencing enhancements, the court re-sentenced Salvador to 324 months' and Armando to 168 months' imprisonment.

This timely appeal followed.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

We have jurisdiction under 18 U.S.C. § 3742(a) and review for abuse of discretion the district court's evaluation of the reliability of evidence at sentencing. *United States v. Hernandez-Guerrero*, 633 F.3d 933, 935 (9th Cir. 2011).

### B. The District Court Abused its Discretion in Relying on the Co-Defendants' Plea Agreements to Determine the Veras' Drug Quantities

At sentencing, the Confrontation Clause does not apply, *United States v. Littlesun*, 444 F.3d 1196, 1197 (9th Cir. 2006), and district courts have wide latitude when deciding upon which information to rely, *United States v. Showalter*, 569 F.3d 1150, 1159 (9th Cir. 2009). But that information must still have "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). Here, the district court relied heavily upon the co-conspirator plea agreements to determine the drug quantities attributable to the Veras, concluding that the plea agreements were reliable statements against interest under Federal Rule of Evidence 804(b)(3). This was reversible error.

The text of Rule 804(b)(3) explains why a purely inculpatory statement is deemed reliable: "a reasonable person in the declarant's position would have made [it] only if the person believed it to be true because, when made, it . . . had so great a tendency . . . to expose the declarant to civil or criminal liability." Fed. R. Evid. 804(b)(3). Yet a factual basis in a negotiated plea agreement, pointing the finger at

others, is no such thing.  This principle was recognized in *Williamson v. United States*, 512 U.S. 594 (1994), where the Supreme Court held that a statement must be "genuinely self-inculpatory" to qualify under Rule 804(b)(3), and vacated a defendant's conviction because it was supported by his accomplice's confession which, in certain parts, "did little to subject" the accomplice "to criminal liability." *Id.* at 604–05.  And as our court has recognized, the Supreme Court's "time-honored teaching" that "a codefendant's confession inculpating the accused is inherently unreliable" is "equally applicable in the sentencing as in the conviction context." *United States v. Pimentel-Lopez*, 859 F.3d 1134, 1144 (9th Cir. 2016) (quoting *Lee v. Illinois*, 476 U.S. 530, 546 (1986)).

A defendant signing a plea agreement may adopt facts that the government wants to hear in exchange for some benefit, usually a lesser sentence.  In pointing their fingers at the Vera brothers, the co-conspirators were acknowledging neither their own guilt nor conduct that would necessarily enhance their own sentences.  Rather, these statements merely helped the government's prosecution of the Veras. *See Williamson*, 512 U.S. at 600 ("The fact that a statement is self-inculpatory does make it more reliable; but the fact that a statement is collateral to a self-inculpatory statement says nothing at all about the collateral statement's reliability.").  And while the factual basis in a plea agreement binds the party who signed it, that factual basis carries far less weight against a co-defendant. *See Lee*, 476 U.S. at 541 ("Due to his strong motivation to implicate the defendant and to exonerate himself, a codefendant's statements about what the defendant said or did are less credible than ordinary hearsay evidence." (internal quotation marks omitted)).  The Advisory Committee Notes to Rule 804(b)(3) stress that "a statement admitting guilt and implicating another person,

made while in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest." Fed. R. Evid. 804(b)(3) advisory committee's note to 1972 proposed rules. Neither the district court nor the government cited any authority suggesting that a factual basis in a plea agreement pointing the finger at someone else qualifies as Rule 804(b)(3) material, and there is ample case law, in addition to *Williamson*, suggesting otherwise.

For example, in *United States v. Magana-Olvera*, 917 F.2d 401 (9th Cir. 1990), we reviewed a similar issue and held that statements of an in-custody co-conspirator implicating the defendant did not qualify as a statement against interest because "they were made in an attempt to curry favor from the federal authorities." *Id.* at 409; *see also United States v. Monaco*, 735 F.2d 1173, 1177 (9th Cir. 1984) (recognizing that "courts have closely scrutinized statements made while the declarant is in custody and offered against the accused, and have consistently held that the circumstances render such statements unreliable").

And we are not alone in coming to this common sense conclusion. The Fifth Circuit explained the dynamic of the co-conspirator in custody this way:

> There were, in addition [to the potentially coercive circumstances of custody], obvious motives for falsification [—;] the very natural desire to curry favor from the arresting officers, the desire to alleviate culpability by implicating others, the enmity often generated in a conspiracy gone awry . . . all might lead an arrestee-declarant to misrepresent or to exaggerate the role of others in the criminal enterprise.

*United States v. Sarmiento-Perez*, 633 F.2d 1092, 1102 (5th Cir. 1981).   This reluctance to allow reliance on co-conspirator admissions is widespread throughout the circuits.  *See United States v. Johnson*, 802 F.2d 1459, 1465 (D.C. Cir. 1986) (holding a post-arrest statement not sufficiently against interest because it is "highly logical" for an arrestee to trivialize his own involvement by implicating the defendant as the kingpin in a drug operation); *United States v. Riley*, 657 F.2d 1377, 1384 (8th Cir. 1981) (holding a hearsay statement not sufficiently against interest because the declarant was in police custody and warned of the adverse consequences of conviction, and thus "may well have believed that it was in her best interest to make a statement implicating [the defendant] in order to ingratiate herself with the authorities and divert attention to another"); *United States v. Bailey*, 581 F.2d 341, 345 & n.4 (3rd Cir. 1978) (holding a hearsay statement not sufficiently against interest because the declarant was in custody and aware of the possibility of leniency if he confessed and implicated the defendant); *cf. United States v. Nagib*, 56 F.3d 798, 805 (7th Cir. 1995) (holding that a hearsay statement qualified under Rule 804(b)(3) in part because there was "no record of any plea agreement or downward departure for cooperation" that could have called the declarant's penal interest into question).

Of course, "hearsay is admissible at sentencing, so long as it is accompanied by some minimal indicia of reliability." *Littlesun*, 444 F.3d at 1200 (internal quotation marks omitted).  But here, the district court's primary rationale for relying upon the plea agreements—Rule 804(b)(3)—was incorrect.  At sentencing, district courts may not rely solely on Rule 804(b)(3) to use non-self-inculpatory statements in a co-conspirator's plea agreement to determine a defendant's drug-quantity liability.

At the same time, we recognize that co-defendant plea agreements could have some probative value at sentencing if otherwise supported by "sufficient indicia of reliability." U.S.S.G. § 6A1.3(a). In *United States v. Berry*, 258 F.3d 971 (9th Cir. 2001), we held that the district court properly relied on co-defendant hearsay statements because multiple statements corroborated each other and thus provided "external consistency" that evidenced their reliability. *Id.* at 976–77; *see also United States v. Valensia*, 222 F.3d 1173, 1184 (9th Cir. 2000) ("[T]he hearsay statements at issue . . . consist of three identical statements, given independently under circumstances which limited the possibility for collusion, that corroborate one another."), *vacated on other grounds sub nom. Valensia v. United States*, 532 U.S. 901 (2001). And "[w]hile we encourage and appreciate express findings by a district court regarding the reliability of hearsay statements introduced at sentencing," we have not reversed for failure "to articulate such findings" where the statements' reliability "is apparent from the record." *Berry*, 258 F.3d at 976.

On this record, however, we do not find "sufficient indicia of reliability to support [the plea agreements'] probable accuracy" as to drug quantity. U.S.S.G. § 6A1.3(a). It was the question of drug quantity, not conspiracy, that was before the district court. And thus it was quantity, not conspiracy, that required corroboration.

As corroboration for the plea agreements, the government has offered other co-defendants' plea agreements and the intercepted calls admitted at trial, as well as the criminal complaint, investigative reports, and DEA laboratory reports that the government submitted with its sentencing memoranda. While these sources may have corroborated the plea agreements as to the Vera brothers'

participation in the drug-trafficking conspiracy, they were not corroborative as to the drug quantities attributable to them.

Turning first to the plea agreements themselves, we reject the government's contention that they corroborate each other. The twelve plea agreements in the record—all drafted by the government—collectively listed over forty narcotics transactions. Each transaction included the specific type and quantity of drugs purchased or sold. Of all these transactions, we found only four that were specifically referenced in the factual bases of more than one plea agreement. None of these four specifically referenced involvement by either Vera brother. The plea agreements therefore do not corroborate each other as to the drug quantities attributable to the Veras.

Nor do the majority of the wiretapped calls. In our review of the record, we found only five transactions listed in the plea agreements that the calls corroborated as to quantity. And while the government argues that encoded words like "rock" or "pants" are corroborative, unless those terms are preceded by quantity designations, we decline to find they corroborate anything more than the Veras' participation in the drug-trafficking conspiracy.

The government also offers the criminal complaint, investigative reports, and DEA laboratory reports as corroboration. Assuming without deciding that a criminal complaint can be used against a defendant at sentencing,[4] we

---

[4] In a 28(j) letter, the government provided two out-of-circuit cases suggesting that district courts may rely on complaint affidavits at sentencing. *See United States v. Clark*, 538 F.3d 803, 814 (7th Cir. 2008) (holding that the sentencing court could rely on the complaint to

found that only two transactions in the plea agreements were indeed corroborated by the complaint as to quantity. Likewise, though we recognize that investigative reports may be relied upon at sentencing, *see United States v. Mara*, 523 F.3d 1036, 1039 (9th Cir. 2008), we found that only two transactions in the plea agreements were corroborated by the reports. And finally, while the DEA laboratory reports may indicate the reliability of the methamphetamine quantities listed in one co-conspirator's plea agreement, neither the plea agreement nor the DEA laboratory reports directly ties the Veras to these methamphetamine sales, and we decline to make this inference without factual support in the record.

Reversal may be necessary when a district court bases a sentence on sources whose reliability is not apparent from the record. *See Berry*, 258 F.3d at 976. And "remand is required" when a "sentencing judge considers unreliable information" that was "demonstrably made the basis for the sentence." *United States v. Huckins*, 53 F.3d 276, 280 (9th Cir. 1995) (internal quotation marks omitted). Here, the factual bases in the plea agreements were neither inherently reliable as statements against interest nor corroborated by other information that made their reliability apparent. They were also demonstrably made the bases of the Veras' sentences. Accordingly, we vacate the sentences and remand for resentencing.

At oral argument, the government argued for the first time that there was ample evidence to support the sentences without considering the plea agreements, so any reliance on

---

corroborate testimony as to the drug quantity attributable to the defendant); *cf. United States v. Jones*, 453 F.3d 777, 780 (6th Cir. 2006) ("An affidavit of complaint is a type of record that a district court can properly rely on in determining the nature of predicate offenses . . . .").

the plea agreements was harmless.  And while that may ultimately be true (and this appears to be a much stronger argument than the one presented in the appellate briefs), we think it best for the district court to consider this argument on remand:  it previously considered the plea agreements to be the "single most significant data source," for its drug-quantity calculations, and it is better positioned to reassess the reliable evidence and make factual findings in the first instance.  We also decline to review the other sentencing enhancements at this time, as we remand this case to the district court to resentence on an open record.[5]

**VACATED AND REMANDED.**

---

[5] Because the errors here would require remand under either a preponderance or a clear-and-convincing evidentiary standard, we do not take up the government's invitation to reconsider the validity of *United States v. Staten*, 466 F.3d 708 (9th Cir. 2006).